**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re Signet Jewelers Limited Securities Litigation* | Case No. 1:16-cv-06728-JMF<br><br>[Related to Case No. 1:17-cv-09853-JMF]<br><br><br>Hon. Jesse M. Furman |

**<u>RESPONSE TO ORDER TO SHOW CAUSE</u>**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................... 1

APPLICABLE LEGAL STANDARD ................................................................. 3

RECENT PROCEDURAL HISTORY ................................................................ 4

    1.    The Dube 3AC ........................................................................... 4

    2.    Signet's New Disclosures On November 21, 2017 About Lower Sales Caused By Systems And Process Issues Related To The Outsourcing Of Signet's Credit Portfolio ................................................................................... 5

    3.    Before The Aydin Action Was Filed, There Was No Indication That MPERS Intended To Expand The Class Period In The Dube Action In Light Of Signet's Recent Disclosures ........................................................................... 5

    4.    The Aydin Complaint ............................................................... 6

    5.    MPERS Informs The Court That It Intends To Expand The Class Period In The Dube Action But Does Not Mention Any Intent To Add The New Theory Of Liability Asserted In The Aydin Action ........................................... 7

    6.    The Actions Become Related When MPERS Filed The Dube 4AC ..................... 8

ARGUMENT ...................................................................................................... 9

    1.    Sanctions Are Inappropriate Because Counsel's Failure To Designate The Aydin Action As Related To The Dube Action Was Based On Counsel's Good Faith Belief At The Time Of Filing That The Actions Were Not Related ................... 10

        A.    The Actions Had Distinct Theories Of Fraud As Of December 15, 2017 ................................................................... 11

        B.    The Actions Had Different And Distinct Class Periods As Of December 15, 2017 .......................................................................... 12

        C.    The Actions Had Only One Common Individual Defendant As Of December 15, 2017 ................................................................... 12

    2.    There Was A Reasonable Basis For Counsel To Believe The Aydin Action Was Not Related To The Dube Action ........................................................ 13

3.    Counsel Satisfied Their Duties With Respect To Potentially Related Cases Even If Counsel Was Incorrect About Whether The Cases Were (Not) Related .......... 14

4.    Policy Concerns Weigh Against Imposing Sanctions For Failing To Designate Cases As Related Where Counsel Has A Good Faith Belief That The Cases Are Not Related ........................................................................................................ 15

CONCLUSION ................................................................................................................ 16

# <u>TABLE OF AUTHORITIES</u>

## <u>CASES</u>

*Fishoff v. Coty Inc.*,
  634 F.3d 647 (2d Cir. 2011) .................................................................................... 3, 13

*Ipcon Collections LLC v. Costco Wholesale Corp.*,
  698 F.3d 58 (2d Cir. 2012) ......................................................................................... 3

*Morley v. Ciba–Geigy Corp.*,
  66 F.3d 21 (2d Cir. 1995) ........................................................................................... 3

*Oliveri v. Thompson*,
  803 F.2d 1265 (2d Cir. 1986) ..................................................................................... 3

*Sakon v. Andreo*,
  119 F.3d 109 (2d Cir. 1997) ....................................................................................... 4

*Sang Lan v. AOL Time Warner, Inc.*,
  No. 11-cv-2870-LBS-JCF, 2012 WL 1633907 (S.D.N.Y. May 9, 2012) ................................ 14

*Schlaifer Nance & Co. v. Estate of Warhol*,
  194 F.3d 323 (2d Cir. 1999) ....................................................................................... 4

*Storey v. Cello Holdings, L.L.C.*,
  347 F.3d 370 (2d Cir. 2003) ............................................................................ *passim*

## <u>RULES</u>

Fed. R. Civ. P. 11 ..................................................................................................... *passim*

Fed. R. Civ. P. 15(a)(1)(B) ............................................................................................ 6

## PRELIMINARY STATEMENT

Plaintiff Nebil Aydin and his counsel, Glancy Prongay & Murray LLP ("GPM" or "Counsel"),[1] respectfully submit this response to the Court's December 22, 2017 order to show cause (1) why *Aydin v. Signet Jewelers Limited, et. al.*, 17-cv-09853 (the "*Aydin* Action") should not be consolidated with *In re Signet Jewelers Limited Securities Litigation*, 16-cv-6728 (the "*Dube* Action" and collectively with the *Aydin* Action, the "Actions"), and (2) why sanctions should not be imposed for failure to designate the *Aydin* Action as related to the *Dube* Action. Dkt. No. 95.[2]

While the Actions should not have been consolidated or designated as related when the *Aydin* Action was filed, subsequent events have now made consolidation appropriate. Accordingly, Aydin consents to consolidation of the Actions. However, when the *Aydin* Action was filed, counsel for *Aydin* had a good faith basis in fact and law not to designate *Aydin* as related to *Dube*. The operative complaint in the *Dube* Action as of December 15, 2017 was the Third Amended Complaint, Dkt. No. 86 (the "*Dube* 3AC"). The *Dube* 3AC alleged a class period of August 29, 2013 to May 24, 2017, and alleged claims against individual defendants Michael Barnes, Mark Light, Ronald Ristau, and Michele Santana, under two theories of fraud: that Signet Jewelers Limited ("Signet" or the "Company") concealed material information regarding (1) its practice of extending credit to high risk borrowers, and (2) its maintaining a culture of sexual harassment. As of December 15, 2017, Bernstein Litowitz Berger & Grossman LLP ("BLBG") and Lead Plaintiff Public Employees' Retirement System of Mississippi ("MPERS") had not announced their intention to expand the class period or file another amended

---

[1] Law Offices of Howard G. Smith is also counsel to Nebil Aydin.

[2] Unless otherwise noted, all docket number references herein refer to the docket in the *Dube* Action.

complaint.

The *Aydin* Action was filed on December 15, 2017,[3] before BLBG filed the 12/21/2017 BLBG Letter[4] stating that MPERS would be amending the *Dube* 3AC.  The *Aydin* Action alleged a class period of August 24, 2017 to November 21, 2017.  As such, the class periods in the Actions did not overlap and were not even contiguous.  There was a three month gap between the two class periods.  Further, the two Actions had only one individual defendant in common – Michele L. Santana – and the wrongful conduct alleged in the *Aydin* Action concerned systems and process disruptions associated with the outsourcing of Signet's credit portfolio. These allegations were distinct from the risky underwriting and sexual harassment allegations that formed the basis of the *Dube* Action.

Subsequent to the filing of the *Aydin* Action, however, the landscape in the *Dube* Action changed considerably.  On December 22, 2017, MPERS amended their complaint to include both the *Aydin* class period and the three month gap that bridged the two class periods.  The newly-filed *Dube* Fourth Amended Complaint ("*Dube* 4AC"), Dkt. No. 96, also included the fraud theory alleged in the *Aydin* Action.  Given MPERS' expansive amendment, GPM agrees the Actions should now be consolidated, and that the consolidated action should proceed with BLBG as Lead Counsel for the class in the now all-encompassing *Dube* Action.

Counsel for Aydin should not, however, be sanctioned for failing to designate the Actions as related.  When evaluating the propriety of sanctions, the Court should evaluate Counsel's choice not to list the *Dube* Action as related to the *Aydin* Action from the point of view of GPM on the date the *Aydin* Action was filed (*i.e.*, December 15, 2017), and any doubt regarding

---

[3] *See* Class Action Complaint for Violations of the Federal Securities Laws, 17-cv-09853, Dkt. No. 1 (the "*Aydin* Complaint").

[4] *See* Letter Motion to Expedite Briefing Schedule for Motion to Consolidate and to Seek Reassignment of Aydin Case as Related.  Dkt. No. 93 (the "12/21/2017 BLBG Letter").

whether sanctions should be imposed should be resolved in favor of Counsel. *See Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir. 1986) ("the court is to avoid hindsight and resolve all doubts in favor of the signer"). For the reasons stated herein, Counsel respectfully, submits that sanctions should not be imposed for failing to designate the Actions as related.

## APPLICABLE LEGAL STANDARD

Sanctions under Federal Rule of Civil Procedure 11 ("Rule 11") are an extraordinary remedy, which should not be imposed unless the attorney takes action to "harass, cause unnecessary delay, or needlessly increase the cost of litigation;" or if the attorney's legal arguments are not warranted by existing law or by a nonfrivolous argument to establish new law, or extend, modify, or reverse existing law. Fed. R. Civ. P. 11(b)(1) & (2). Mere litigiousness and incorrect legal positions (neither of which are present here in Aydin's counsel's opinion) are not sanctionable. *See Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 391, 393 (2d Cir. 2003) ("litigiousness do[es] not alone amount to improper purpose," and "[m]erely incorrect legal statements are not sanctionable"). In addition, "[t]he fact that a legal theory is a long-shot does not necessarily mean it is sanctionable." *Fishoff v. Coty Inc.*, 634 F.3d 647, 654 (2d Cir. 2011). "The operative question is whether . . . the legal position has 'no chance of success,' and there is 'no reasonable argument to extend, modify or reverse the law as it stands.'" *Id.* (quoting *Morley v. Ciba–Geigy Corp.*, 66 F.3d 21, 25 (2d Cir. 1995)).[5]

Similarly, under Title 28, Section 1927 of the United States Code, sanctions are permitted only when an attorney "unreasonably and vexatiously" "multiplies the proceedings" (28 U.S.C. §

---

[5] Moreover, if this Court finds that Rule 11 was violated (which Counsel respectfully submits it was not), the magnitude of any sanction should be limited to what is sufficient to "deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). Even when a court finds a violation of Rule 11, the court has discretion to choose not to impose sanctions. *See Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 63 (2d Cir. 2012).

1927), and "only when there is a finding of conduct constituting or akin to bad faith." *Sakon v. Andreo*, 119 F.3d 109, 114 (2d Cir. 1997).  *See also id.* (the "attorney's actions must be so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose") (internal quotation marks and citation omitted).  Moreover, if the Court endeavors to impose sanctions under Section 1927, its factual findings supporting bad faith "must be characterized by a high degree of specificity." *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 338 (2d Cir. 1999).

In deciding whether to issue sanctions, the Court should exercise considerable "restraint" given the "troublesome aspect of a trial court's power to impose sanctions," namely that the Court is acting as the "accuser, fact finder and sentencing judge."  *Storey*, 347 F.3d at 387 (internal quotation marks and citations omitted).

## RECENT PROCEDURAL HISTORY

### 1.    The *Dube* 3AC

On September 29, 2017, MPERS filed the *Dube* 3AC.  The *Dube* 3AC alleged an expanded class period of August 29, 2013 to May 24, 2017, *Dube* 3AC ¶ 531, and asserted claims against Signet and four individual defendants, *id.* at ¶¶ 28-32.  The *Dube* 3AC put forth two theories of liability based on two sets of alleged concealed facts:

- Signet "extended credit to high-risk borrowers" and that as a result "the Company's loan portfolio contained a material amount of high-risk loans," *id.* at ¶ 60; and

- Signet concealed a "culture of rampant sexual harassment," *id.* at ¶ 142.

In the *Dube* 3AC, MPERS alleges that the final corrective disclosure relating to the first set of allegations occurred on May 25, 2017, when "investors learned just how poor the credit quality of the loan book truly was."  *Id.* at ¶ 13.  On that day, Signet allegedly announced poor

financial results, and the sale of the prime portion of its credit portfolio, but not the sale of its subprime loans. *Id.* at ¶¶ 135-36. Signet also announced a plan to outsource the servicing of its subprime portfolio. *Id.* at ¶ 137. The *Dube* 3AC alleged that these disclosures revealed the poor quality of Signet's loan portfolio. *Id.* at ¶ 139.

## 2.   Signet's New Disclosures On November 21, 2017 About Lower Sales Caused By Systems And Process Issues Related To The Outsourcing Of Signet's Credit Portfolio

On November 21, 2017, Signet disclosed that its sales results for the Company's third quarter of 2018 (ending October 28, 2017) were negatively impacted by "systems and process disruptions associated with outsourcing of [its] credit portfolio." *Aydin* Compl. ¶ 21. According to Signet, the disruptions were "primarily related to the conversion of IT systems and the magnitude of in-store process changes related to the new program." *Id.* at ¶ 22. As an example, Signet specifically noted that "server interruptions" caused "an overwhelming number of calls to our partners' customer service centers." *Id.* In response to this news, Signet's stock price fell more than thirty percent. *Id.* at ¶ 23.

## 3.   Before The *Aydin* Action Was Filed, There Was No Indication That MPERS Intended To Expand The Class Period In The *Dube* Action In Light Of Signet's Recent Disclosures

The defendants' motion to dismiss the *Dube* 3AC was filed on December 1, 2017. There is no indication that, between November 21, 2017 and December 1, 2017, MPERS intended to further amend the *Dube* 3AC to expand the class period based on the new information Signet disclosed on November 21, 2017. Presumably, if MPERS had intended to do so, BLBG would have promptly informed the defendants that MPERS intended to expand the *Dube* Action class period and that the defendants should not waste resources drafting and filing a motion to dismiss a complaint which MPERS intended to amend.

On December 1, 2017, the defendants in the *Dube* Action filed their motion to dismiss the *Dube* 3AC.  *See* Dkt. No. 89.  Thereafter, on December 4, 2017, the Court *sua sponte* issued an order stating that, pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), MPERS had the right to file an amended complaint by December 22, 2017, and stating that if MPERS chose to stand on the operative *Dube* 3AC, that MPERS would "not be given any further opportunity to amend the complaint to address issues raised by the motion to dismiss."  Dkt. No. 92.  It is reasonable to read the order as stating that MPERS was being given leave to amend its complaint with regard to the alleged deficiencies in the *Dube* 3AC for the stated class period.

### 4.      The *Aydin* Complaint

On December 15, 2017, GPM filed the *Aydin* Complaint.  The *Aydin* Complaint alleges a class period of August 24, 2017 to November 21, 2017, *Aydin* Compl. ¶¶ 1, 24, which starts three months after the end of the class period alleged in the *Dube* 3AC (May 24, 2017).

The *Aydin* Complaint alleges a distinct theory of fraud, unrelated to Signet's poor underwriting standards, risky loan portfolio, and culture of sexual harassment.  Rather, the *Aydin* Complaint alleges that Signet "was experiencing systems and process disruptions associated with the outsourcing of its credit portfolio" caused in part by issues with conversion of IT systems and large in-store process changes.  *See Aydin* Compl. ¶¶ 5, 20.

For example, the *Aydin* Complaint alleges that, among others, the following statements attributed to Signet's Chief Executive Officer ("CEO"), Virginia C. Drosos, in an October 23, 2017 press release were false and misleading in light of the undisclosed transition problems:

> Virginia C. Drosos, [CEO] of Signet, said: "***The successful completion of the first phase of strategic outsourcing of our credit portfolio*** has allowed us to reduce our outstanding debt and return capital to our shareholders. In addition, the transaction enables us to optimize our business model with greater organizational focus on driving the growth of our OmniChannel retail platforms and delivering a true Customer First experience."

* * *

> Ms. Drosos added: "*A key priority of our credit transaction has been to minimize impact on our credit customers and substantially maintain our net sales. This has been achieved through our partnership with Alliance Data and Genesis to continue to provide the full suite of our credit offerings for our customers, and adding an incremental lease-purchase financing option with Progressive Leasing.* I want to thank our partners and Signet team for their hard work in executing this complex transaction on time."

*Aydin* Compl. ¶ 19 (emphasis added).

The outsourcing of the credit portfolio, the factual backdrop on which the *Aydin* fraud theory is based, did not begin until after the *Dube* 3AC's class period. Signet announced the first phase of the plan to outsource its credit portfolio in a press release on May 25, 2017, entitled "Signet Jewelers Announces First Phase of Strategic Outsourcing of Credit Portfolio,"[6] which was the day after the Dube 3AC class period ended and the same day that the *Dube* 3AC alleged "investors learned just how poor the credit quality of the loan book truly was." *Dube* 3AC ¶ 13.

The *Aydin* Complaint only alleges claims against Signet and two individual defendants, with the primary individual defendant being Drosos. *See Aydin* Compl. ¶ 13. However, Drosos was not a defendant in the *Dube* 3AC, *see* 3AC ¶¶ 28-34, and only became Signet's CEO effective as of August 1, 2017.

### 5. MPERS Informs The Court That It Intends To Expand The Class Period In The *Dube* Action But Does Not Mention Any Intent To Add The New Theory Of Liability Asserted In The *Aydin* Action

On December 21, 2017, a month after Signet's November 21, 2017 disclosure, BLBG filed a letter stating that MPERS intended to expand the class period to include the November 21, 2017 disclosure, and subsume the *Aydin* Action's class period. *See* Dkt. No. 93. On this basis, BLBG requested that the Court designate the *Aydin* Action as related to the *Dube* Action

---

[6] Available at: https://www.businesswire.com/news/home/20170525005317/en/Signet-Jewelers-Announces-Phase-Strategic-Outsourcing-Credit (last visited January 2, 2017).

and set a briefing schedule regarding consolidation.  *Id.*

The 12/21/2017 BLBG Letter did not directly indicate that MPERS' forthcoming amended complaint would include new falsity allegations relating to statements postdating the class period in the *Dube* 3AC.  Rather, BLBG indicated that the primary reason for expanding the *Dube* class Period was to now allege that Signet's November 21, 2017 disclosures about decreased sales represented a materialization of the risk relating to the tightening of Signet's credit standards:

> Among other things, the amendments in the Complaint [(*i.e.*, the then unfiled *Dube* 4AC that MPERS planned to file the next day)] will include additional facts related to the claims concerning the loan portfolio, which were disclosed after we filed the [*Dube* 3AC] on September 29, 2017.  Specifically, on November 21, 2017, Signet reported an earnings miss, declining sales and credit penetration rate, and sharply lower fiscal 2018 guidance. Signet attributed these results to problems with outsourcing the loan portfolio. This disclosure caused Signet's stock price to decline more than 30%.  The Complaint [(*i.e.*, the unfiled *Dube* 4AC)] alleges that these unexpected results were caused in material part by Signet's tightening of its extremely reckless lending practices during the outsourcing, and thus, this new disclosure represented a materialization of risks that were concealed by Defendants' misstatements and omissions.

12/21/2017 BLBG Letter at 2.

### 6.    The Actions Become Related When MPERS Filed The Dube 4AC

On December 22, 2017, the Court ordered Aydin and GPM to show cause why the *Aydin* Action should not be consolidated with the *Dube* Action, and why sanctions should not be imposed for failure to designate the *Aydin* Action as related to the *Dube* Action.  Dkt. No. 95.  At the time of the Court's Order, however, the *Aydin* Complaint was still very different from (and unrelated to) the *Dube* 3AC for all the reasons discussed above.[7]

---

[7] The defendants also acknowledged that the *Aydin* Complaint and *Dube* 3AC were not necessarily based on the same fraud theory, stating on December 21, 2017 that "[w]e cannot, however, take a position on consolidation until we review the Fourth Amended Complaint to be filed tomorrow and compare the allegations with those in *Aydin*."  *See* Dkt. No. 94.

Later on the same day, December 22, 2017, MPERS filed the *Dube* 4AC. The *Dube* 4AC alleges a class period of August 29, 2013 to December 1, 2017, encompassing the *Aydin* Action class period, and adds Drosos as a new defendant. *See Dube* 4AC ¶¶ 36, 567.[8] The *Dube* 4AC alleges the same fraud theories alleged in the *Dube* 3AC: namely that Signet "extended credit to high-risk borrowers" and concealed a "culture of rampant sexual harassment." *Dube* 4AC ¶¶ 64, 167. The *Dube* 4AC also alleges the fraud theory from the *Aydin* Complaint: "Signet was experiencing technical and process disruptions in connection with the credit outsourcing transaction . . . ." *Dube* 4AC ¶ 539.

## ARGUMENT

The *Aydin* Action was not filed to interfere with the *Dube* Action, nor motivated by a desire to re-open the lead plaintiff process in connection with the *Dube* Action. Quite the opposite, the *Aydin* Action was filed on Counsel's good faith belief that the Actions were fundamentally different – with the only similarities (at the time the *Aydin* Action was filed) being that the Actions were both securities fraud class actions involving Signet and one common individual defendant.[9] Because of Counsel's sincere opinion that the Actions were not related, Counsel did not mark the *Aydin* Action as related to the *Dube* Action.

The *Aydin* Action and the *Dube* 3AC involved fundamentally different class periods, theories of liability, subject matter, and conduct. While the 12/21/2017 BLBG Letter claimed that *Aydin* alleges "misrepresentations and omissions concerning Signet's loan portfolio," *id.* at 2, it omitted that the *Aydin* Complaint alleges an entirely distinct theory of liability and conduct relating to undisclosed transition issues occurring after the *Dube* 3AC class period.

---

[8] The *Dube* 4AC also alleges a corrective disclosure on December 1, 2017, *id.* at ¶554, which is not alleged in the *Aydin* Complaint.

[9] Local Civil Rule 13(a)(2)(A) ("L.R. 13" or "Local Rule 13") dictates that "[c]ivil cases shall not be deemed related merely because they  involve common legal issues or the same parties."

GPM respectfully submits that Counsel should not be sanctioned for failing to designate the *Aydin* Action as related to the *Dube* Action because, when the *Aydin* Action was commenced on December 15, 2017, GPM had (at the very least) a good faith basis for believing that the Actions were not related.  It was not until the 12/21/2017 BLBG Letter that GPM became aware that MPERS intended to expand the *Dube* Action class period by roughly six months in a forthcoming amended complaint to subsume the wholly different *Aydin* Action putative class and fraud theory.  Counsel should not be expected on December 15, 2017, to designate the Actions as related based on information not known until December 21, 2017.[10]

1.  **Sanctions Are Inappropriate Because Counsel's Failure To Designate The *Aydin* Action As Related To The *Dube* Action Was Based On Counsel's Good Faith Belief At The Time Of Filing That The Actions Were Not Related**

In determining whether the sanctions are warranted, the Court must first evaluate whether the *Aydin* Action was irrefutably related to the *Dube* Action on December 15, 2017, when the *Aydin* Action was filed.  Counsel respectfully submits that, here, sanctions are inappropriate because the Actions were not related at that time.

In determining relatedness, the Court must consider whether:

(A) the actions concern the same or substantially similar parties, property, transactions or events; (B) there is substantial factual overlap; (C) the parties could be subjected to conflicting orders; and (D) whether absent a determination of relatedness there would be a substantial duplication of effort and expense, delay, or undue burden on the Court, parties or witnesses.

Local Civil Rule 13(a)(1).  Local Rule 13 also provides limitations, including: "Civil cases shall not be deemed related merely because they involve common legal issues or the same parties." L.R. 13(a)(2)(A).

---

[10] Moreover, the earliest date the Actions were related was on December 22, 2017, when MPERS actually filed the *Dube* 4AC

Here, the *Aydin* Action differed from the *Dube* Action in several fundamental ways, including, differing theories of liability, putative classes (*i.e.*, different time periods), conduct, and subject matter.

### A.   The Actions Had Distinct Theories Of Fraud As Of December 15, 2017

When *Aydin* was filed, the Actions were not related because they alleged entirely different and distinct fraud theories.  The operative *Dube* 3AC alleged that Signet, contrary to its representations to investors, had "engaged in reckless underwriting through which it routinely extended credit to high-risk borrowers" and that "the Company's loan portfolio contained a material amount of high-risk loans that were likely to default in significant numbers."  *See, e.g.*, *Dube* 3AC ¶ 60.  The *Aydin* Action, in contrast, has nothing to do with Signet's underwriting nor the quality of its borrowers.[11]  Similarly, the *Aydin* Action is completely unrelated to the *Dube* 3AC's other theory of liability relating to sexual harassment allegations.  The *Aydin* Action alleges that, in connection with the sale of its prime-only credit accounts receivable, the outsourcing of its non-prime accounts receivable credit servicing, and the implementation its lease-purchase program, that Signet experienced problems converting its IT systems, had trouble adjusting to in-store process changes given the magnitude of the changes, and that as a result, the Company was experiencing "systems and process disruptions" including "server interruptions" and "an overwhelming number of calls" to service centers, which hurt its sales.  *Aydin* Compl. ¶¶ 19-20, 22.

---

[11]  In fact, the *Dube* 3AC had alleged that on May 25, 2017, three months before the class period in the *Aydin* Complaint, "investors learned just how poor the credit quality of the loan book truly was."  *Dube* 3AC ¶ 13.

The *Dube* 4AC acknowledges that the fraud theory in the *Aydin* Complaint was distinct from the "risky lending" fraud theory in the *Dube* 3AC by alleging that Signet's October 23, 2017 statements were false for two separate reasons:

> This statement was materially false and misleading when made. Contrary to the statements that the Company had "achieved" the "key priority of our credit transaction . . . to minimize impact on our credit customers and substantially maintain our net sales[,]" Defendants knew that the tightening of Signet's reckless credit standards was having a material negative impact on net sales. ***Defendants also knew that by no later than mid-October, Signet was experiencing technical and process disruptions in connection with the credit outsourcing transaction, further exacerbating the impact of the credit tightening on sales***.

*Dube* 4AC ¶ 539 (emphasis added).  As such, the Actions were not related since they did not "concern the same or substantially similar . . . transactions or events," there was not "substantial factual overlap," and the parties would not be "subjected to conflicting orders."  L.R. 13(a)(1).

> ### B.   The Actions Had Different And Distinct Class Periods As Of December 15, 2017

The Actions were also not related because they alleged different class periods.  The *Dube* 3AC alleged a class period of August 29, 2013 to May 24, 2017.  *See Dube* 3AC ¶ 531.  The *Ayden* Action, in contrast, alleged a class period of August 24, 2017 to November 21, 2017— which began three months after, and did not overlap with, the *Dube* class period.  *See Ayden* Compl. ¶¶ 1, 24.  As such, the Actions were not related since they did not "concern the same or substantially similar . . . transactions or events," there was not "substantial factual overlap," and the parties would not be "subjected to conflicting orders."  L.R. 13(a)(1).

> ### C.   The Actions Had Only One Common Individual Defendant As Of December 15, 2017

The Actions were also not related because they alleged claims against different principal individual defendants.  The *Dube 3*AC did not name Drosos as a defendant.  The *Aydin* Action, in contrast, named Drosos as an important defendant.  *See Aydin* Compl. ¶¶ 3, 15, 17, 19.  For

example, the *Aydin* Complaint quotes multiple false statements made by Drosos, including her statements that the "completion of the first phase" of Signet's "strategic outsourcing of [its] credit portfolio" was "successful" (*id.* ¶ 19), and that the Company had "achieved" its goals of minimizing the impact of the credit transaction on its credit customers and "substantially maintain[ing] [its] net sales." *Id.* The *Aydin* Complaint also charged Drosos with responsibility, as Signet's CEO, for the other false statements regarding the Company's credit portfolio transaction and in-store process changes in Signet's press releases. *See id.* ¶¶ 15, 17, 19. As such, when *Aydin* was filed, the Actions did not "concern the same . . . parties," there was not "substantial factual overlap," and Drosos would not "be subjected to conflicting orders." L.R. 13(a)(1). Moreover, the fact that the Actions shared some defendants does not weigh heavily in favor of relatedness. *See* L.R. 13(a)(2)(A) ("Civil cases shall not be deemed related merely because they involve . . . the same parties.").

Since the Actions alleged different fraud theories, during different time periods, against a different primary individual defendant, they were not related. As such, sanctions should not be imposed for Counsel's failure to designate the Actions as related when the *Aydin* Action was filed.

### 2.    There Was A Reasonable Basis For Counsel To Believe The *Aydin* Action Was Not Related To The *Dube* Action

Whether GPM's legal reasoning was correct or incorrect does not bear on whether sanctions should be imposed. *See Storey*, 347 F.3d at 391 ("Merely incorrect legal statements are not sanctionable under Rule 11(b)(2)."); *Fishoff*, 634 F.3d at 654 ("The fact that a legal theory is a long-shot does not necessarily mean it is sanctionable."). Even if incorrect, GPM's decision not to designate the Actions as related was "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing

new law."  Fed. R. Civ. P. 11(b)(2); *see also Sang Lan v. AOL Time Warner, Inc.*, No. 11-cv-2870-LBS-JCF, 2012 WL 1633907, at *3 (S.D.N.Y. May 9, 2012) ("[a]n argument constitutes a frivolous legal position for purposes of Rule 11 sanctions if," *inter alia*, "there is no chance of success") (citation omitted).  As such, sanctions are inappropriate because, as demonstrated, *supra*, there was ample legal and factual reason to not designate the *Aydin* Action as related to the *Dube* Action.[12]

###    3.    Counsel Satisfied Their Duties With Respect To Potentially Related Cases Even If Counsel Was Incorrect About Whether The Cases Were (Not) Related

A plaintiff filing a complaint must disclose "any contention of relatedness."  L.R. 13. The Civil Cover Sheet filed with the *Aydin* Complaint accordingly asks: "DO YOU CLAIM THIS CASE IS RELATED TO A CIVIL CASE NOW PENDING IN S.D.N.Y. . . ?"  *See* Dkt. No. 93-1 at 2.  If there is a "contention of relatedness," the plaintiff must file "a Related Case Statement stating clearly and succinctly the basis for the contention."  *Id.*  Here, GPM did not contend that the Actions were related and GPM was not aware of any contention of relatedness when the *Aydin* Action was filed.  Even if GPM was ultimately incorrect, it does not mean that GPM failed to comply with Local Rule 13 because GPM had a good faith belief that the Actions were not related.

Furthermore, Local Rule 13 does not require the plaintiff to make the determination regarding relatedness.  The determination of relatedness belongs solely to the Court.[13]  *See* L.R. 13(a)(1) ("In determining relatedness, a judge will consider . . . ."); L.R. 13(b)(2) ("the judge . . .

---

[12] In addition, this Court earlier ordered republication of notice when the former lead plaintiffs added "categorically different theories of securities fraud."  *See* Dkt. No. 46.  Counsel reasonably did not anticipate that MPERS would further expand the class period or incorporate the novel theory of fraud alleged in *Aydin* Complaint into an amended complaint.

[13] Subject to Assignment Committee review.  *See* L.R. 13(b)(2) & (3).

shall decide whether to accept or reject the case"); L.R. 13(b)(3) ("If the assigned judge believes the case is related . . . .").

Counsel's actions were in good faith and clearly not motivated by any desire to hide the existence of the *Aydin* Action from MPERS or the Court.[14]   Accordingly, GPM's failure to designate *Aydin* as related cannot be said to have been done in order to "harass, cause unnecessary delay, or needlessly increase the cost of litigation."  Fed. R. Civ. P. 11(b)(1).

### 4.   Policy Concerns Weigh Against Imposing Sanctions For Failing To Designate Cases As Related Where Counsel Has A Good Faith Belief That The Cases Are Not Related

Imposing sanctions for incorrectly deciding whether cases are (or are not) related would disrupt the related case determination process by unnecessarily pressuring counsel to potentially take actions adverse to their client's interests.

Local Rule 13 recognizes that there will be situations where, as here, the parties disagree about whether cases are related and provides a procedure for such a disagreement.  Local Rule 13(b)(3), entitled "[c]laims of relatedness by other parties," states that if "[a] party other than the one filing a case . . . contends its case is related to another," the party may "so advise in writing the judge assigned in its case and request a transfer."  L.R. 13(b)(3).  The process strikes a balance between judicial efficiency and a plaintiff's counsel's obligation to competently litigate on behalf of their client.[15]

Counsel respectfully submits that public policy concerns weigh against sanctions for GPM's failure to designate *Aydin* as related to *Dube*.   Imposing sanctions for a good faith (yet

---

[14] The *Aydin* Action was filed in the same District as the *Dube* Action and Counsel promptly published a nation-wide notice that the *Aydin* Action had been filed.  *See* Dkt. No. 93-2.

[15] Consistent with an attorney's duty to provide competent representation, counsel should be left free to contest relatedness when there is a legal basis to do so.  *See* N.Y. Rule of Professional Conduct 1.1 ("A lawyer shall not intentionally . . . fail to seek the objectives of the client through reasonably available means.").

potentially incorrect) belief that two cases are not related may discourage counsel from contesting relatedness, even when there is a legal basis to do so, since failure to win that legal argument might lead to sanctions.

## CONCLUSION

For the foregoing reasons, Nebil Aydin and GPM request that the Court: (1) consolidate the Actions, and (2) decline to impose sanctions.

Dated:  January 2, 2018                    **GLANCY PRONGAY & MURRAY LLP**

                                           By:  *s/ Brian P. Murray*
                                           Brian P. Murray (BM-9954)
                                           Lesley F. Portnoy (LP-1941)
                                           230 Park Ave., Suite 530
                                           New York, New York 10169
                                           Telephone: (212) 682-5340
                                           Facsimile: (212) 884-0988
                                           Email:  bmurray@glancylaw.com

                                           **GLANCY PRONGAY & MURRAY LLP**
                                           Lionel Z. Glancy
                                           Robert V. Prongay
                                           Charles H. Linehan
                                           1925 Century Park East, Suite 2100
                                           Los Angeles, CA 90067
                                           Telephone: (310) 201-9150
                                           Facsimile: (310) 201-9160

                                           **LAW OFFICES OF HOWARD G. SMITH**
                                           Howard G. Smith
                                           3070 Bristol Pike, Suite 112
                                           Bensalem, PA 19020
                                           Telephone: (215) 638-4847
                                           Facsimile: (215) 638-4867

                                           *Attorneys for Plaintiff Nebil Aydin*

**PROOF OF SERVICE BY ELECTRONIC POSTING PURSUANT TO SOUTHERN
DISTRICT OF NEW YORK ECF AND LOCAL RULES AND BY MAIL
ON ALL KNOWN NON-REGISTERED PARTIES**

I, the undersigned say:

I am not a party to the above case and am over eighteen years old.

On January 2, 2018, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Southern District of New York, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on January 2, 2018, at Los Angeles, California.

*s/ Brian P. Murray*
Brian P. Murray

## Mailing Information for a Case 1:16-cv-06728-JMF In re Signet Jewelers Limited Securities Litigation

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Joseph S. Allerhand**
  joseph.allerhand@weil.com,megan.richardson@weil.com,david.byeff@weil.com,Robert.Ruff@weil.com,Nikolei.Kaplanov@weil.com,MCO.ECF@weil.com,stacy.nettleton@weil.com,nymao@ecf.pacerpro.com

- **Joseph Alexander Hood , II**
  ahood@pomlaw.com,abarbosa@pomlaw.com

- **Phillip C. Kim**
  pkim@rosenlegal.com

- **Jeremy Alan Lieberman**
  jalieberman@pomlaw.com,ahood@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com,jsnematzadeh@pomlaw.com

- **Stacy Nettleton**
  stacy.nettleton@weil.com,MCO.ECF@weil.com,nymao@ecf.pacerpro.com

- **Lesley Frank Portnoy**
  LPortnoy@glancylaw.com,info@glancylaw.com

- **Robert Vincent Prongay**
  rprongay@glancylaw.com,echang@glancylaw.com

- **John James Rizio-Hamilton**
  johnr@blbglaw.com,rochelle@blbglaw.com,kurt@blbglaw.com,errol.hall@blbglaw.com,Michael.Mathai@blbglaw.com,nathan.donlon@blbglaw.com,brenna.nelinson@blbglaw.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com,RachelJ@rgrdlaw.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,mblasy@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Ross Mitchell Shikowitz**
  ross@blbglaw.com,Genevieve.Sico@blbglaw.com,AdamW@blbglaw.com,Matthew.Mahady@blbglaw.com,scott.foglietta@blbglaw.com,nick@blbglaw.com,Nathan.Donlon@blbglaw.com,ruben@blbglaw.com,garyw@blbglaw.com

- **Gerald H. Silk**
  jerry@blbglaw.com,Benjamin.Riesenberg@blbglaw.com,errol.hall@blbglaw.com,AdamW@blbglaw.com,ross@blbglaw.com

- **Garth Avery Spencer**
  gspencer@glancylaw.com

- **Austin Patrick Van**
  avan@pomlaw.com,egoodman@pomlaw.com

- **Tamar Aliza Weinrib**
  taweinrib@pomlaw.com

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)