# BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

ATTORNEYS AT LAW

NEW YORK • CALIFORNIA • LOUISIANA • ILLINOIS

John Rizio-Hamilton
johnr@blbglaw.com
212-554-1505

March 16, 2018

**BY ECF**
Honorable Jesse M. Furman
Thurgood Marshall U.S. Courthouse
40 Foley Square
Room 1105
New York, New York 10007

      Re:  *In re Signet Jewelers Limited Securities Litigation*, No. 1:16-CV-06728-JMF

Dear Judge Furman:

      We represent the Public Employees' Retirement System of Mississippi ("MissPERS"), the Court-appointed Lead Plaintiff in the above-captioned action. We write to request the Court's permission to amend the Fourth Amended Complaint (the "Complaint") to add limited factual allegations concerning new disclosures made by Signet on March 14, 2018. Allowing the amendment need not delay resolution of Defendants' pending motion to dismiss. Given the limited nature of the amendment, any supplemental motion to dismiss briefing to address the new allegations could be conducted promptly through short letters to the Court. We have conferred with Defendants and they do not consent to our request.[1]

## BACKGROUND

      The Complaint alleges that, unbeknownst to investors, Signet drove sales during the class period by engaging in extremely reckless underwriting, saddling the Company with hundreds of millions of dollars in high-risk loans. *See, e.g.*, Compl. ¶¶64-86. It further alleges that Signet materially understated its reserves by amounts reaching $84 million. *Id.* ¶305. The truth

---

[1] A redlined copy of Lead Plaintiff's proposed Fifth Amended Class Action Complaint ("Amended Complaint"), which compares it to the Complaint (ECF No. 96), is enclosed as Exhibit A. A clean copy of the Amended Complaint is enclosed as Exhibit B. Unless otherwise noted herein: (i) defined terms have the meanings set forth in the Complaint; (ii) all references to "Compl. ¶__" and "Am. Compl. ¶__" are to paragraphs in the Complaint and Amended Complaint, respectively; (iii) all internal citations, quotation marks, and brackets are omitted; and (iv) all emphasis is added.

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

Hon. Jesse M. Furman
March 16, 2018
Page 2

partially emerged when Signet unexpectedly announced that it had commissioned a "strategic review" of the credit portfolio, including the possibility of a sale. *Id.* ¶¶109-121. As Signet prepared to sell its portfolio, it was forced to tighten its reckless underwriting standards, leading to a collapse in sales. *See, e.g., id.* ¶¶122-132.

The Complaint also alleges that, on November 18, 2016, the analyst Compass Point Research & Trading ("Compass Point") "reported that the value of Signet's portfolio could be $130 million lower than Defendants were reporting because Signet had failed to write-off a massive amount of severely risky loans that were likely to default," and quotes from the report:

> We are increasingly under the belief that there is a large segment of the portfolio that should have been written off, but has not. We refer to this segment as a "zombie" portfolio. . . . A more conservative measure of a 15% zombie portfolio would imply that about $260 million of the portfolio may be represented by customers that should be charged off, but have not. Yet Signet only had $129.4M of reserves at the end of FQ2'17 suggest[ing] a charge [of $130.6 million] could be necessary as a clean-up provision (not to mention that the company would still need reserves for the remaining portfolio). <u>If there is ultimately any clean-up charge, it would basically reflect profits that were recognized in prior periods that should not have been.</u>

*Id.* ¶133. The Complaint further quotes a May 25, 2017 Compass Point report stating that Signet's inability to find a buyer for the subprime portion of the portfolio "suggest[ed that] the company was underwriting credits much deeper down the credit spectrum than investors believed." *Id.* ¶149.

In their motion to dismiss the Complaint, Defendants argued that the Complaint's allegations were inadequate for a variety of reasons. Of significance here, Defendants prominently argued that Lead Plaintiff had failed to adequately allege that reserves were understated because Signet had never dramatically increased its reserves, leading Defendants to contend that "[t]here [was] no punchline to [Lead] Plaintiff's reserve allegations." ECF No. 102 at 18-19. In a reply brief filed on March 9, 2018, Defendants reiterated this argument, stating that Lead Plaintiff's claims were "base[d] . . . solely on rank speculation" given the absence of "a significant increase in reserves." ECF No. 106 at 4.

Before market open on March 14, 2018, Signet issued a press release announcing its fiscal-year 2018 results and revealing that it had reached an agreement to sell its subprime loans to a private investor. Am. Compl. ¶¶16, 168. Signet disclosed that it was selling the subprime loans on its books for only 72% of par value, a 15% discount to the carrying value Signet historically employed, and that the Company expected to incur a loss in connection with the transaction of $165 million to $175 million, including servicing and transaction costs. *Id.* ¶¶168-69. Signet stated that it expected to close the sale in the second quarter of fiscal-year 2019, but planned to book $140 million in losses earlier, in the first quarter. *Id.* ¶169. Net of costs, the sale

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

Hon. Jesse M. Furman
March 16, 2018
Page 3

forced Signet to recognize a $113 million to $118 million loss on the recorded value of portfolio. *Id.*

Later that same day, Signet filed with the SEC its Form 8-K disclosing financial results for fiscal-year 2018. Signet's Form 8-K revealed that the Company's same-store sales had continued to fall, with a 5.3% decline for fiscal-year 2018 relative to fiscal-year 2017. *Id.* ¶171. The 8-K also revealed that the credit participation rate for Sterling Jewelers had continued to decline, coming in at 57.2% for fiscal-year 2018 (down from 62% for fiscal-year 2017). *Id.*

Analysts reacted strongly to the news. For example, an analyst with Susquehanna Financial Group stated that Signet's announced loss "was substantially more than we or the Street had modeled into estimates" and that the charge "is likely the result of under-provisioning done by management over the last several years." *Id.* ¶¶172-73.

In response to these revelations, the price of Signet's stock dropped precipitously, ending the day down $9.69 from its previous day's close, or over 20%, on extraordinary volume of over 25 million shares.

The limited proposed amendments set forth in the Amended Complaint concern the facts that were revealed in Signet's March 14, 2018 disclosures and the market reaction, and extend the class period up to that day. *See* Ex. B. These amendments are shown in redline against the text of the Complaint in Ex. A. The substantive amendments appear in paragraphs 16, 26, 109, 168-175, 550, 564, and 577.

## ARGUMENT

Federal Rule of Civil Procedure 15(a) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The Court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Accordingly, the Second Circuit has held that a Rule 15(a) motion should be denied only for such reasons as undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party." *Brown Rudnick, LLP v. Surgical Orthomedics, Inc.*, 2015 WL 363674, at *2 (S.D.N.Y. Jan. 28, 2015) (Furman, J.), *order clarified*, 2015 WL 1097342 (S.D.N.Y. Mar. 12, 2015).

Here, there is no applicable reason to deny leave to amend.

### A. There Is No Undue Delay, Bad Faith, Repeated Failure To Cure Deficiencies, Or Undue Prejudice To Defendants

None of the reasons for denying a Rule 15(a) motion apply here. To start, MissPERS has good faith reasons for seeking leave to amend: the terms of the loan portfolio sale (and Signet's still-worsening sales figures and credit penetration rate) directly relate to and strengthen the allegations pleaded in the Complaint. *See supra* at 1-3. There is no basis to suggest that the decision to seek leave to amend was made in bad faith, particularly in light of the early stage of this litigation and the fact that MissPERS' proposed amendments are based on disclosures made just days earlier. *See, e.g.*, *Fastiggi v. Waterview Hills Nursing Ctr., Inc.*, 6 F. Supp. 2d 242, 243 (S.D.N.Y. 1998) (no bad faith in proposing amendment "early in the litigation, before substantial

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

Hon. Jesse M. Furman
March 16, 2018
Page 4

discovery has taken place"); *Lehman Bros. Commercial Corp. v. Minmetals Int'l Non-Ferrous Metals Trading Co.*, 1996 WL 346426, at *2 (S.D.N.Y. June 25, 1996) (no bad faith where "proposed amendments are based primarily on newly discovered evidence").

Further, there has been no undue delay: MissPERS filed its motion just two days after Signet's March 14, 2018 disclosures. *Cf. Rachman Bag Co. v. Liberty Mut. Ins. Co.*, 46 F.3d 230, 235 (2d Cir. 1995) (four-year delay not undue). And at this early stage, prior to the Court's ruling on the motion to dismiss and well before any substantial discovery has taken place, there have been no deficiencies for MissPERS to cure, and there will be no prejudice to Defendants arising from MissPERS' amendment. *See Silva Run Worldwide Ltd. v. Gaming Lottery Corp.*, 215 F.R.D. 105, 107 (S.D.N.Y. 2003) (no prejudice where "proposed amendment would neither require [opposing party] to expend significant additional resources to conduct discovery and prepare for trial, nor significantly delay the resolution of the dispute."); *Fastiggi*, 6 F. Supp. 2d at 243 (no prejudice from amendment "early in the litigation, before substantial discovery has taken place").

### B.  The Proposed Amendment Is Not Futile

"In addressing the proposed futility of an amendment, the proper inquiry is comparable to that required upon a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6)." *Aetna*, 404 F.3d at 604. For all the reasons set forth in Lead Plaintiff's opposition to Defendants' motion to dismiss, Lead Plaintiff submits that its claims – as currently pled or as amended – should be sustained. That said, Lead Plaintiff recognizes that the Court is in the process of making that determination. The purpose of this motion is to allow the Court to make that evaluation with the benefit of these recently-disclosed facts, which are clearly relevant to the decision at hand.

As noted above, the Complaint alleges that Signet materially understated its loan loss reserves by amounts reaching $84 million. *See* Compl. ¶305. The Amended Complaint strengthens this claim by alleging Signet has now been forced to recognize a loss of $113 million to $118 million in connection with the sale of the subprime loan book (not including servicing and transaction costs). Am. Compl. ¶168. The Amended Complaint also alleges the market's dramatic reaction to these revelations – including analysts stating that the loss "was substantially more than we or the Street had modeled into estimates" and that the charge Signet was forced to take was "likely the result of under-provisioning done by management over the last several years." *Id.* ¶¶172-73. These newly-disclosed facts corroborate the Complaint's allegations concerning Signet's understated reserves and refute Defendants' argument that Signet has not been forced to recognize significant losses on the portfolio. *See, e.g.*, ECF No. 102 at 18-19.

Lead Plaintiff should have the opportunity to present these facts in support of its claims, and it is appropriate for the Court to consider them as it evaluates the motion to dismiss.

### C.  There Is Good Cause For The Proposed Amendment

To the extent Rule 16(b)(4) applies, Lead Plaintiff's motion satisfies that standard as well. In order to prevail on a motion to amend a pleading after the deadline provided by a court's

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

Hon. Jesse M. Furman
March 16, 2018
Page 5

scheduling order, a movant "must demonstrate 'good cause' for the amendment." *Brown Rudnick*, 2015 WL 363674, at *2 (quoting FRCP 16(b)(4)). As this Court has explained, "good cause' for an amendment "'depends on the diligence of the moving party.'" *Id.* (quoting *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000)). "Specifically, the moving party 'must demonstrate that it has been diligent in its efforts to meet the Court's deadlines,' and that 'despite its having exercised diligence, the applicable deadline could not have been reasonably met.'" *Id.* (quoting *Sokol Holdings v. BMD Munai, Inc.*, 2009 WL 2524611, at *7 (S.D.N.Y. Aug.14, 2009)).

Here, MissPERS has diligently met the Court's deadlines, including its deadline for filing the Complaint. *E.g.*, ECF Nos. 92, 96. Moreover, MissPERS' proposed amendment concerns facts that were revealed on March 14, 2018, which it plainly could not have included in the complaint filed on the Court's December 22, 2017 deadline. ECF No. 92. Accordingly, there is good cause for MissPERS' amendment.

\*   \*   \*   \*   \*

For the reasons set forth above, MissPERS respectfully requests that the Court grant it leave to amend its Complaint. We thank the Court for its attention to this matter.

Respectfully submitted,

*/s/ John Rizio-Hamilton /mmm*

John Rizio-Hamilton

Enclosures
cc:   All attorneys of record (via ECF)