# EXHIBIT 3A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

IN RE SIGNET JEWELERS LIMITED
SECURITIES LITIGATION

Civil Action No. 1:16-cv-06728-CM-SDA

---

**DECLARATION OF JOHN RIZIO-HAMILTON**
**IN SUPPORT OF LEAD COUNSEL'S MOTION FOR**
**ATTORNEYS' FEES AND LITIGATION EXPENSES, FILED ON**
**BEHALF OF BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

I, John Rizio-Hamilton, hereby declare under penalty of perjury as follows:

1.      I am a partner in the law firm of Bernstein Litowitz Berger & Grossmann LLP ("BLB&G" or "Lead Counsel").   I submit this Declaration in support of Lead Counsel's application for an award of attorneys' fees in connection with services rendered in the above-captioned class action (the "Action"), as well as for payment of expenses incurred by my firm in connection with the Action.  I have personal knowledge of the matters set forth herein.[1]

2.      My firm, as Lead Counsel of record in the Action and counsel for Lead Plaintiff Public Employees' Retirement System of Mississippi, was involved in all aspects of the prosecution and resolution of the Action, as set forth in my Declaration in Support of (I) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation and (II) Lead Counsel's Motion for Award of Attorneys' Fees and Litigation Expenses, filed herewith.

---

[1] Unless otherwise defined in this declaration, all capitalized terms have the meanings defined in the Stipulation and Agreement of Settlement dated March 16, 2020 (ECF No. 247-1).

3.       The schedule attached hereto as Exhibit 1 is a detailed summary indicating the amount of time spent by each BLB&G attorney and professional support staff employee involved in this Action who devoted ten or more hours to the Action from its inception through and including June 9, 2020 and the lodestar calculation for those individuals based on my firm's current hourly rates.  The schedule was prepared from contemporaneous daily time records regularly prepared and maintained by BLB&G.

4.       As the partner responsible for supervising my firm's work on this case, I reviewed these time and expense records to prepare this Declaration.  The purpose of this review was to confirm both the accuracy of the time entries and expenses and the necessity for, and reasonableness of, the time and expenses committed to the litigation.  As a result of this review, reductions were made in the exercise of counsel's judgment.  In addition, all time expended in preparing this application for fees and expenses has been excluded.

5.       Following this review and the adjustments made, I believe that the time reflected in the firm's lodestar calculation and the expenses for which payment is sought as stated in this Declaration are reasonable in amount and were necessary for the effective and efficient prosecution and resolution of the litigation.  In addition, based on my experience in similar litigation, the expenses are all of a type that would normally be billed to a fee-paying client in the private legal marketplace.

6.       The hourly rates for the BLB&G attorneys and professional support staff employees included in Exhibit 1 are the same as, or comparable to, the rates submitted by my firm and accepted by courts for lodestar cross-checks in other securities class action litigation fee applications.

7.      My firm's rates are set based on periodic analysis of rates used by firms performing comparable work and have been approved by courts.  Different timekeepers within the same employment category (*e.g.*, partners, associates, paralegals, etc.) may have different rates based on a variety of factors, including years of practice, years at the firm, year in the current position (*e.g.*, years as a partner), relevant experience, relative expertise, and the rates of similarly experienced peers at our firm or other firms.

8.      The total number of hours expended on this Action by my firm from its inception through and including June 9, 2020, is 68,996.50 hours.  The total lodestar for my firm for that period is $29,592,668.75.  My firm's lodestar figures are based upon the firm's hourly rates, which do not include costs for expense items.

9.      None of the attorneys listed in Exhibit 1 to this Declaration and included in my firm's lodestar for the Action are (or were) "contract attorneys."  All attorneys and employees of the firm listed in the attached schedule work (or worked) at BLB&G's offices at 1251 Avenue of the Americas in New York, New York.  Except for the partners listed in the attached schedule, all of the other attorneys and professional support staff listed in the schedule are (or were) W-2 employees of the firm and were not independent contractors issued Form 1099s.  Thus, the firm pays FICA and Medicare taxes on their behalf, along with state and federal unemployment taxes.  These employees are (or were) fully supervised by the firm's partners and have (or had) access to secretarial, paralegal, and information technology support.  BLB&G also assigns a firm email address to each attorney or other employee it employs, including those listed.

10.     As detailed in Exhibit 2, my firm is seeking payment for a total of $3,143,174.16 in expenses incurred in connection with the prosecution of this Action from its inception through and including June 9, 2020.

11.     The following is additional information regarding certain of these expenses:

(a)     **Online Legal Research** ($49,866.65) and **Online Factual Research** ($83,844.87). The charges reflected are for out-of-pocket payments to the vendors such as Westlaw, Lexis/Nexis, ALM Media, Thomson Reuters, and PACER for research done in connection with this litigation. These resources were used to obtain access to court filings, to conduct legal research and cite-checking of briefs, and to obtain factual information regarding the claims asserted through access to various financial databases and other factual databases. These expenses represent the actual expenses incurred by BLB&G for use of these services in connection with this litigation. There are no administrative charges included in these figures. Online research is billed to each case based on actual usage at a charge set by the vendor. When BLB&G utilizes online services provided by a vendor with a flat-rate contract, access to the service is by a billing code entered for the specific case being litigated. At the end of each billing period, BLB&G's costs for such services are allocated to specific cases based on the percentage of use in connection with that specific case in the billing period.

(b)     **Experts** ($2,004,360.72). Lead Counsel consulted with experts in the fields of loss causation and accounting during its investigation and the preparation of the amended complaints, and consulted further with its damages expert during the settlement negotiations with Defendants and the development of the proposed Plan of Allocation. Lead Counsel also retained and consulted extensively with experts regarding the accounting, consumer loan underwriting, corporate disclosure, and sexual harassment issues that were central to this litigation, among others.

(c)     **Document Management/Litigation Support** ($442,528.65). Lead Counsel retained an outside document management vendor to maintain the document database that was

used to process, organize and review the approximately 3.6 million pages of documents produced by Defendants and third parties in this Action.

(d)   **Mediation** ($73,660.63).  This represents Lead Plaintiff's share of fees paid to Phillips ADRs for the services of the mediator, the Hon. Layn R. Phillips (USDJ, Ret.).  Judge Phillips conducted in-person mediation sessions on November 18, 2019, December 9, 2019 and January 7, 2020, and issued the mediator's recommendation that lead to the settlement of the Action.

(e)   **Internal Copying & Printing** ($25,065.80).  Our firm charges $0.10 per page for in-house copying and for printing of documents.

(f)   **Out-of-Town Travel** ($44,412.14).  BLB&G has incurred travel expenses for its attorneys to attend depositions conducted in this case and to collect Lead Plaintiff's documents for review and production.  The expenses reflected in Exhibit 2 are the expenses actually incurred by my firm or reflect "caps" on travel costs based on the following criteria: (i) airfare is capped at coach rates; (ii) hotel charges per night are capped at $350 for "high cost" locations and $250 for "lower cost" locations, as categorized by IRS guidelines (the relevant cities and how they are categorized are reflected on Exhibit 3); and (iii) meals while traveling are capped at $20 per person for breakfast, $25 per person for lunch, and $50 per person for dinner.

(g)   **Working Meals** ($9,506.27).  Out-of-office meals are capped at $25 per person for lunch and $50 per person for dinner and in-office working meals are capped at $20 per person for lunch and $30 per person for dinner.

12.   The expenses incurred in this Action are reflected in the records of my firm, which are regularly prepared and maintained in the ordinary course of business.  These records are

prepared from expense vouchers, check records, and other source materials and are an accurate record of the expenses incurred.

13.     With respect to the standing of my firm, attached hereto as Exhibit 3 is a brief biography of my firm and the attorneys still employed with the firm and involved in this matter.

I declare, under penalty of perjury, that the foregoing facts are true and correct.

Executed on:  June 16, 2020

*/s/ John Rizio-Hamilton*
John Rizio-Hamilton

**EXHIBIT 1**

*In re Signet Jewelers Limited Securities Litigation*
Civil Action No. 1:16-cv-06728-CM-SDA (S.D.N.Y.)

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

**TIME REPORT**

Inception through and including June 9, 2020

| NAME | HOURS | HOURLY RATE | LODESTAR |
|---|---|---|---|
| **Partners** | | | |
| Max Berger | 235.25 | $1,300 | $305,825.00 |
| Rebecca Boon | 1,859.75 | $825 | $1,534,293.75 |
| John Rizio-Hamilton | 2,188.75 | $975 | $2,134,031.25 |
| Gerald Silk | 75.50 | $1,100 | $83,050.00 |
| | | | |
| **Senior Counsel** | | | |
| Jai Chandrasekhar | 76.00 | $800 | $60,800.00 |
| John Mills | 200.75 | $750 | $150,562.50 |
| | | | |
| **Associates** | | | |
| Michael Mathai | 2,485.00 | $575 | $1,428,875.00 |
| Brenna Nelinson | 1,752.00 | $500 | $876,000.00 |
| Benjamin Riesenberg | 147.00 | $475 | $69,825.00 |
| Ross Shikowitz | 107.50 | $600 | $64,500.00 |
| Matthew Traylor | 377.75 | $425 | $160,543.75 |
| | | | |
| **Staff Attorneys** | | | |
| Benjamin Bakke | 2,290.50 | $395 | $904,747.50 |
| Alexa Butler | 1,859.25 | $395 | $734,403.75 |
| Stephanie Butler | 1,781.25 | $350 | $623,437.50 |
| Jeffrey Castro | 2,173.00 | $395 | $858,335.00 |
| Chris Clarkin | 2,522.50 | $395 | $996,387.50 |
| Erika Connolly | 2,629.50 | $375 | $986,062.50 |
| Mashariki Daniels | 1,851.00 | $395 | $731,145.00 |
| Alex Dickin | 2,884.75 | $375 | $1,081,781.25 |
| Igor Faynshteyn | 2,000.00 | $375 | $750,000.00 |
| Joseph Ferrone | 541.00 | $395 | $213,695.00 |
| Cheryl Gandy | 1,634.50 | $395 | $645,627.50 |

7

| NAME | HOURS | HOURLY RATE | LODESTAR |
|---|---|---|---|
| Reena Garg | 822.75 | $375 | $308,531.25 |
| Darienne Grey | 1,517.25 | $375 | $568,968.75 |
| Daniel Gruttadaro | 1,876.75 | $375 | $703,781.25 |
| Jared Hoffman | 2,283.75 | $395 | $902,081.25 |
| Irina Knopp | 2,201.00 | $350 | $770,350.00 |
| Paul Lim | 1,953.75 | $395 | $771,731.25 |
| Jeffrey Messinger | 2,176.25 | $395 | $859,618.75 |
| Vanessa Olivier | 2,076.50 | $375 | $778,687.50 |
| Comfort Orji | 2,064.00 | $395 | $815,280.00 |
| Julius Panell | 2,381.25 | $395 | $940,593.75 |
| Chesley Parker | 1,542.00 | $395 | $609,090.00 |
| Priscilla Pellecchia | 909.50 | $375 | $341,062.50 |
| Jessica Purcell | 1,960.50 | $395 | $774,397.50 |
| Richard Raganella | 607.75 | $350 | $212,712.50 |
| Doug Secular | 1,952.75 | $395 | $771,336.25 |
| Christina Suarez | 670.50 | $395 | $264,847.50 |
| Megan Taggart | 1,716.25 | $375 | $643,593.75 |
| Catherine Truesaw | 937.75 | $395 | $370,411.25 |
| Vincent Le Voci | 1,153.00 | $395 | $455,435.00 |
| Cecile Wortman | 2,178.75 | $350 | $762,562.50 |
| Kendall Wostl | 488.25 | $395 | $192,858.75 |
|  |  |  |  |
| **Financial Analysts** |  |  |  |
| Tanjila Sultana | 51.25 | $375 | $19,218.75 |
| Adam Weinschel | 76.75 | $525 | $40,293.75 |
|  |  |  |  |
| **Investigators** |  |  |  |
| Chris Altiery | 61.00 | $255 | $15,555.00 |
| Amy Bitkower | 124.75 | $550 | $68,612.50 |
| Jenna Goldin | 347.75 | $375 | $130,406.25 |
| Andrew Thompson | 345.00 | $375 | $129,375.00 |
|  |  |  |  |
| **Litigation Support** |  |  |  |
| Johanna Pitcairn | 391.75 | $375 | $146,906.25 |
|  |  |  |  |
| **Managing Clerk** |  |  |  |
| Mahiri Buffong | 68.75 | $350 | $24,062.50 |

| NAME | HOURS | HOURLY RATE | LODESTAR |
|---|---|---|---|
| Errol Hall | 22.75 | $310 | $7,052.50 |
| | | | |
| **Paralegals** | | | |
| Jesse Axman | 96.25 | $255 | $24,543.75 |
| Nathan Donlon | 1,307.00 | $335 | $437,845.00 |
| Matthew Gluck | 443.75 | $350 | $155,312.50 |
| Janielle Lattimore | 90.50 | $350 | $31,675.00 |
| Matthew Mahady | 92.75 | $350 | $32,462.50 |
| Matthew Molloy | 49.25 | $300 | $14,775.00 |
| Desiree Morris | 159.00 | $350 | $55,650.00 |
| Gary Weston | 125.50 | $375 | $47,062.50 |
| | | | |
| **TOTAL LODESTAR:** | **68,996.50** | | **$29,592,668.75** |

**EXHIBIT 2**

*In re Signet Jewelers Limited Securities Litigation*
Civil Action No. 1:16-cv-06728-CM-SDA (S.D.N.Y.)

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

**EXPENSE REPORT**

Inception through and including June 9, 2020

| CATEGORY | AMOUNT |
|---|---|
| Service of Process and Witness Costs | $104,738.64 |
| PSLRA Notice Costs | $1,050.00 |
| Online Legal Research | $49,866.65 |
| Online Factual Research | $83,844.87 |
| Telephone | $128.46 |
| Postage & Express Mail | $12,162.05 |
| Hand Delivery Charges | $627.00 |
| Local Transportation | $17,528.33 |
| Internal Copying/Printing | $25,065.80 |
| Outside Copying | $162,701.17 |
| Out of Town Travel* | $44,412.14 |
| Working Meals | $9,506.27 |
| Court Reporting & Transcripts | $110,411.52 |
| Special Publications | $581.26 |
| Experts | $2,004,360.72 |
| Mediation | $73,660.63 |
| Document Management/Litigation Support | $442,528.65 |
| | |
| **TOTAL EXPENSES:** | **$3,143,174.16** |

**\*** This includes hotels in the "higher-cost" cities of Boston, MA, Ft. Lauderdale, FL, and Seattle, WA, capped at $350 per night, and the "lower-cost" cities of Atlanta, GA, Austin, TX, Akron, OH, Cleveland, OH, Dallas, TX, Jackson, MS, Lafayette, LA, Milwaukee, WI, Raleigh, NC, and Washington, DC, capped at $250 per night.

**EXHIBIT 3**

*In re Signet Jewelers Limited Securities Litigation*
Civil Action No. 1:16-cv-06728-CM-SDA (S.D.N.Y.)

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

**FIRM BIOGRAPHY**





Trusted Advocacy. Proven Results.

Bernstein Litowitz Berger & Grossmann LLP

Attorneys at Law

# Firm Resume

**New York**
1251 Avenue of the Americas
44th Floor
New York, NY 10020
Tel: 212-554-1400
Fax: 212-554-1444

**California**
2121 Avenue of the Stars
Suite 2575
Los Angeles, CA 90067
Tel: 310-819-3470

**Louisiana**
2727 Prytania Street
Suite 14
New Orleans, LA 70130
Tel: 504-899-2339
Fax: 504-899-2342

**Illinois**
875 North Michigan Avenue
Suite 3100
Chicago, IL 60611
Tel: 312-373-3880
Fax: 312-794-7801

**Delaware**
500 Delaware Avenue
Suite 901
Wilmington, DE 19801
Tel: 302-364-3600



# TABLE OF CONTENTS

FIRM OVERVIEW ...................................................................................................................1
    More Top Securities Recoveries .........................................................................................1
    Giving Shareholders a Voice and Changing Business Practices for the Better ...................2
    Advocacy for Victims of Corporate Wrongdoing ...............................................................2
PRACTICE AREAS ...............................................................................................................4
    Securities Fraud Litigation .................................................................................................4
    Corporate Governance and Shareholders' Rights ..............................................................4
    Employment Discrimination and Civil Rights ....................................................................4
    General Commercial Litigation and Alternative Dispute Resolution ...................................5
    Distressed Debt and Bankruptcy Creditor Negotiation ......................................................5
    Consumer Advocacy ...........................................................................................................5
THE COURTS SPEAK ..........................................................................................................6
RECENT ACTIONS & SIGNIFICANT RECOVERIES .......................................................7
    Securities Class Actions .....................................................................................................7
    Corporate Governance and Shareholders' Rights ............................................................13
    Employment Discrimination and Civil Rights ..................................................................18
CLIENTS AND FEES ..........................................................................................................19
IN THE PUBLIC INTEREST ...............................................................................................20
    Bernstein Litowitz Berger & Grossmann Public Interest Law Fellows ............................20
    Firm sponsorship of Her Justice .......................................................................................20
    The Paul M. Bernstein Memorial Scholarship ..................................................................20
    Firm sponsorship of City Year New York .........................................................................20
    Max W. Berger Pre-Law Program ....................................................................................20
    New York Says Thank You Foundation .............................................................................20
OUR ATTORNEYS ..............................................................................................................21
    Members ...........................................................................................................................21
        Max W. Berger ...........................................................................................................21
        Gerald H. Silk .............................................................................................................23
        John Rizio-Hamilton ...................................................................................................24
        Rebecca E. Boon .........................................................................................................25
    Senior Counsel .................................................................................................................26
        Jai K. Chandrasekhar ..................................................................................................26
        John J. Mills ................................................................................................................27
    Associates .........................................................................................................................27
        Michael Mathai ...........................................................................................................27
        Brenna Nelinson .........................................................................................................28
        Benjamin Riesenberg ..................................................................................................28
        Ross Shikowitz ...........................................................................................................28
        Matthew Traylor .........................................................................................................29
    Staff Attorneys ..................................................................................................................29
        Ben Bakke ...................................................................................................................29
        Alexa Butler ...............................................................................................................30
        Stephanie Butler ..........................................................................................................30
        Jeffrey Castro ..............................................................................................................30
        Christopher Clarkin .....................................................................................................30
        Erika Connolly ............................................................................................................31
        Mashariki Daniels .......................................................................................................31
        Alex Dickin .................................................................................................................31
        Igor Faynshteyn ..........................................................................................................32
        Joseph Ferrone ...........................................................................................................32



Cheryl Gandy ........................................................................................................................32
Reena Garg ...........................................................................................................................32
Darienne Grey .......................................................................................................................33
Daniel Gruttadaro .................................................................................................................33
Jared Hoffman ......................................................................................................................33
Irina Knopp ...........................................................................................................................33
Paul Lim ................................................................................................................................34
Jeffrey Messinger ..................................................................................................................34
Vanessa Olivier .....................................................................................................................34
Comfort Orji .........................................................................................................................34
Julius Panell ..........................................................................................................................35
Christina Papp .......................................................................................................................35
Chesley Parker ......................................................................................................................35
Priscilla Pellecchia ...............................................................................................................35
Jessica Purcell .......................................................................................................................36
Richard Raganella .................................................................................................................36
Douglas Secular ....................................................................................................................36
Megan Taggart ......................................................................................................................36
Catherine Truesaw ................................................................................................................36
Vincent Le Voci ....................................................................................................................37
Cecile Wortman ....................................................................................................................37
Kendall Wostl .......................................................................................................................37

Since our founding in 1983, Bernstein Litowitz Berger & Grossmann LLP has obtained many of the largest monetary recoveries in history – over $33 billion on behalf of investors. Unique among our peers, the firm has obtained the largest settlements ever agreed to by public companies related to securities fraud, including three of the ten largest in history.  Working with our clients, we have also used the litigation process to achieve precedent-setting reforms which have increased market transparency, held wrongdoers accountable and improved corporate business practices in groundbreaking ways.

## FIRM OVERVIEW

Bernstein Litowitz Berger & Grossmann LLP ("BLB&G"), a national law firm with offices located in New York, California, Louisiana and Illinois, prosecutes class and private actions on behalf of individual and institutional clients.  The firm's litigation practice areas include securities class and direct actions in federal and state courts; corporate governance and shareholder rights litigation, including claims for breach of fiduciary duty and proxy violations; mergers and acquisitions and transactional litigation; alternative dispute resolution; distressed debt and bankruptcy; civil rights and employment discrimination; consumer class actions and antitrust.  We also handle, on behalf of major institutional clients and lenders, more general complex commercial litigation involving allegations of breach of contract, accountants' liability, breach of fiduciary duty, fraud, and negligence.

We are the nation's leading firm in representing institutional investors in securities fraud class action litigation.  The firm's institutional client base includes the New York State Common Retirement Fund; the California Public Employees' Retirement System (CalPERS); the Ontario Teachers' Pension Plan Board (the largest public pension funds in North America); the Los Angeles County Employees Retirement Association (LACERA); the Chicago Municipal, Police and Labor Retirement Systems; the Teacher Retirement System of Texas; the Arkansas Teacher Retirement System; Forsta AP-fonden ("AP1"); Fjarde AP-fonden ("AP4"); the Florida State Board of Administration; the Public Employees' Retirement System of Mississippi; the New York State Teachers' Retirement System; the Ohio Public Employees Retirement System; the State Teachers Retirement System of Ohio; the Oregon Public Employees Retirement System; the Virginia Retirement System; the Louisiana School, State, Teachers and Municipal Police Retirement Systems; the Public School Teachers' Pension and Retirement Fund of Chicago; the New Jersey Division of Investment of the Department of the Treasury; TIAA-CREF and other private institutions; as well as numerous other public and Taft-Hartley pension entities.

### MORE TOP SECURITIES RECOVERIES

Since its founding in 1983, Bernstein Litowitz Berger & Grossmann LLP has litigated some of the most complex cases in history and has obtained over $33 billion on behalf of investors.  Unique among its peers, the firm has negotiated the largest settlements ever agreed to by public companies related to securities fraud, and obtained many of the largest securities recoveries in history (including 6 of the top 13):



- *In re WorldCom, Inc. Securities Litigation* – $6.19 billion recovery
- *In re Cendant Corporation Securities Litigation* – $3.3 billion recovery
- *In re Bank of America Corp. Securities, Derivative, and Employee Retirement Income Security Act (ERISA) Litigation* – $2.43 billion recovery
- *In re Nortel Networks Corporation Securities Litigation* ("Nortel II") – $1.07 billion recovery
- *In re Merck & Co., Inc. Securities Litigation* – $1.06 billion recovery
- *In re McKesson HBOC, Inc. Securities Litigation* – $1.05 billion recovery*

*Source: ISS Securities Class Action Services

For over a decade, ISS Securities Class Action Services has compiled and published data on securities litigation recoveries and the law firms prosecuting the cases. BLB&G has been at or near the top of their rankings every year – often with the highest total recoveries, the highest settlement average, or both.

BLB&G also eclipses all competitors on ISS SCAS's "Top 100 Settlements of All Time" report, having recovered nearly 40% of all the settlement dollars represented in the report (over $25 billion), and having prosecuted over a third of all the cases on the list (35 of 100).

## GIVING SHAREHOLDERS A VOICE AND CHANGING BUSINESS PRACTICES FOR THE BETTER

BLB&G was among the first law firms ever to obtain meaningful corporate governance reforms through litigation. In courts throughout the country, we prosecute shareholder class and derivative actions, asserting claims for breach of fiduciary duty and proxy violations wherever the conduct of corporate officers and/or directors, as well as M&A transactions, seek to deprive shareholders of fair value, undermine shareholder voting rights, or allow management to profit at the expense of shareholders.

We have prosecuted seminal cases establishing precedents which have increased market transparency, held wrongdoers accountable, addressed issues in the boardroom and executive suite, challenged unfair deals, and improved corporate business practices in groundbreaking ways.

From setting new standards of director independence, to restructuring board practices in the wake of persistent illegal conduct; from challenging the improper use of defensive measures and deal protections for management's benefit, to confronting stock options backdating abuses and other self-dealing by executives; we have confronted a variety of questionable, unethical and proliferating corporate practices. Seeking to reform faulty management structures and address breaches of fiduciary duty by corporate officers and directors, we have obtained unprecedented victories on behalf of shareholders seeking to improve governance and protect the shareholder franchise.

## ADVOCACY FOR VICTIMS OF CORPORATE WRONGDOING

While BLB&G is widely recognized as one of the leading law firms worldwide advising institutional investors on issues related to corporate governance, shareholder rights, and securities litigation, we have also prosecuted some of the most significant employment discrimination, civil rights and consumer protection cases on record. Equally important, the firm has advanced novel and socially beneficial principles by developing important new law in the areas in which we litigate.



The firm served as co-lead counsel on behalf of Texaco's African-American employees in *Roberts v. Texaco Inc.*, which resulted in a recovery of $176 million, the largest settlement ever in a race discrimination case. The creation of a Task Force to oversee Texaco's human resources activities for five years was unprecedented and served as a model for public companies going forward.

In the consumer field, the firm has gained a nationwide reputation for vigorously protecting the rights of individuals and for achieving exceptional settlements. In several instances, the firm has obtained recoveries for consumer classes that represented the entirety of the class's losses – an extraordinary result in consumer class cases.



# PRACTICE AREAS

## SECURITIES FRAUD LITIGATION

Securities fraud litigation is the cornerstone of the firm's litigation practice. Since its founding, the firm has had the distinction of having tried and prosecuted many of the most high-profile securities fraud class actions in history, recovering billions of dollars and obtaining unprecedented corporate governance reforms on behalf of our clients. BLB&G continues to play a leading role in major securities litigation pending in federal and state courts, and the firm remains one of the nation's leaders in representing institutional investors in securities fraud class and derivative litigation.

The firm also pursues direct actions in securities fraud cases when appropriate. By selectively opting out of certain securities class actions, we seek to resolve our clients' claims efficiently and for substantial multiples of what they might otherwise recover from related class action settlements.

The attorneys in the securities fraud litigation practice group have extensive experience in the laws that regulate the securities markets and in the disclosure requirements of corporations that issue publicly traded securities. Many of the attorneys in this practice group also have accounting backgrounds. The group has access to state-of-the-art, online financial wire services and databases, which enable it to instantaneously investigate any potential securities fraud action involving a public company's debt and equity securities.

## CORPORATE GOVERNANCE AND SHAREHOLDERS' RIGHTS

The Corporate Governance and Shareholders' Rights Practice Group prosecutes derivative actions, claims for breach of fiduciary duty, and proxy violations on behalf of individual and institutional investors in state and federal courts throughout the country. The group has obtained unprecedented victories on behalf of shareholders seeking to improve corporate governance and protect the shareholder franchise, prosecuting actions challenging numerous highly publicized corporate transactions which violated fair process and fair price, and the applicability of the business judgment rule. We have also addressed issues of corporate waste, shareholder voting rights claims, workplace harassment, and executive compensation. As a result of the firm's high-profile and widely recognized capabilities, the corporate governance practice group is increasingly in demand by institutional investors who are exercising a more assertive voice with corporate boards regarding corporate governance issues and the board's accountability to shareholders.

The firm is actively involved in litigating numerous cases in this area of law, an area that has become increasingly important in light of efforts by various market participants to buy companies from their public shareholders "on the cheap."

## EMPLOYMENT DISCRIMINATION AND CIVIL RIGHTS

The Employment Discrimination and Civil Rights Practice Group prosecutes class and multi-plaintiff actions, and other high-impact litigation against employers and other societal institutions that violate federal or state employment, anti-discrimination, and civil rights laws. The practice group represents diverse clients on a wide range of issues including Title VII actions: race, gender, sexual orientation and age discrimination suits; sexual harassment, and "glass ceiling" cases in which otherwise qualified employees are passed over for promotions to managerial or executive positions.

Bernstein Litowitz Berger & Grossmann LLP is committed to effecting positive social change in the workplace and in society. The practice group has the necessary financial and human resources to ensure that the class action approach to discrimination and civil rights issues is successful. This



litigation method serves to empower employees and other civil rights victims, who are usually discouraged from pursuing litigation because of personal financial limitations, and offers the potential for effecting the greatest positive change for the greatest number of people affected by discriminatory practice in the workplace.

## GENERAL COMMERCIAL LITIGATION AND ALTERNATIVE DISPUTE RESOLUTION

The General Commercial Litigation practice group provides contingency fee representation in complex business litigation and has obtained substantial recoveries on behalf of investors, corporations, bankruptcy trustees, creditor committees and other business entities.  We have faced down powerful and well-funded law firms and defendants – and consistently prevailed.  However, not every dispute is best resolved through the courts.  In such cases, BLB&G Alternative Dispute practitioners offer clients an accomplished team and a creative venue in which to resolve conflicts outside of the litigation process.  BLB&G has extensive experience – and a marked record of successes – in ADR practice.  For example, in the wake of the credit crisis, we successfully represented numerous former executives of a major financial institution in arbitrations relating to claims for compensation.  Our attorneys have led complex business-to-business arbitrations and mediations domestically and abroad representing clients before all the major arbitration tribunals, including the American Arbitration Association (AAA), FINRA, JAMS, International Chamber of Commerce (ICC) and the London Court of International Arbitration.

## DISTRESSED DEBT AND BANKRUPTCY CREDITOR NEGOTIATION

The BLB&G Distressed Debt and Bankruptcy Creditor Negotiation Group has obtained billions of dollars through litigation on behalf of bondholders and creditors of distressed and bankrupt companies, as well as through third-party litigation brought by bankruptcy trustees and creditors' committees against auditors, appraisers, lawyers, officers and directors, and other defendants who may have contributed to client losses.  As counsel, we advise institutions and individuals nationwide in developing strategies and tactics to recover assets presumed lost as a result of bankruptcy.  Our record in this practice area is characterized by extensive trial experience in addition to completion of successful settlements.

## CONSUMER ADVOCACY

The Consumer Advocacy Practice Group at Bernstein Litowitz Berger & Grossmann LLP prosecutes cases across the entire spectrum of consumer rights, consumer fraud, and consumer protection issues.  The firm represents victimized consumers in state and federal courts nationwide in individual and class action lawsuits that seek to provide consumers and purchasers of defective products with a means to recover their damages.  The attorneys in this group are well versed in the vast array of laws and regulations that govern consumer interests and are aggressive, effective, court-tested litigators.  The Consumer Practice Advocacy Group has recovered hundreds of millions of dollars for millions of consumers throughout the country.  Most notably, in a number of cases, the firm has obtained recoveries for the class that were the entirety of the potential damages suffered by the consumer.  For example, in actions against MCI and Empire Blue Cross, the firm recovered all of the damages suffered by the class.  The group achieved its successes by advancing innovative claims and theories of liabilities, such as obtaining decisions in Pennsylvania and Illinois appellate courts that adopted a new theory of consumer damages in mass marketing cases.  Bernstein Litowitz Berger & Grossmann LLP is, thus, able to lead the way in protecting the rights of consumers.



## THE COURTS SPEAK

Throughout the firm's history, many courts have recognized the professional excellence and diligence of the firm and its members.  A few examples are set forth below.

### IN RE WORLDCOM, INC. SECURITIES LITIGATION

**THE HONORABLE DENISE COTE OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

> *"I have the utmost confidence in plaintiffs' counsel...they have been doing a superb job....  The Class is extraordinarily well represented in this litigation."*
>
> *"The magnitude of this settlement is attributable in significant part to Lead Counsel's advocacy and energy....   The quality of the representation given by Lead Counsel...has been superb...and is unsurpassed in this Court's experience with plaintiffs' counsel in securities litigation."*
>
> *"Lead Counsel has been energetic and creative. . . . Its negotiations with the Citigroup Defendants have resulted in a settlement of historic proportions."*

### IN RE CLARENT CORPORATION SECURITIES LITIGATION

**THE HONORABLE CHARLES R. BREYER OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

> *"It was the best tried case I've witnessed in my years on the bench . . ."*
>
> *"[A]n extraordinarily civilized way of presenting the issues to you [the jury]. . . . We've all been treated to great civility and the highest professional ethics in the presentation of the case...."*
>
> *"These trial lawyers are some of the best I've ever seen."*

### LANDRY'S RESTAURANTS, INC. SHAREHOLDER LITIGATION

**VICE CHANCELLOR J. TRAVIS LASTER OF THE DELAWARE COURT OF CHANCERY**

> *"I do want to make a comment again about the excellent efforts . . . put into this case. . . . This case, I think, shows precisely the type of benefits that you can achieve for stockholders and how representative litigation can be a very important part of our corporate governance system . . . you hold up this case as an example of what to do."*

### McCALL V. SCOTT (COLUMBIA/HCA DERIVATIVE LITIGATION)

**THE HONORABLE THOMAS A. HIGGINS OF THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE**

> *"Counsel's excellent qualifications and reputations are well documented in the record, and they have litigated this complex case adeptly and tenaciously throughout the six years it has been pending. They assumed an enormous risk and have shown great patience by taking this case on a contingent basis, and despite an early setback they have persevered and brought about not only a large cash settlement but sweeping corporate reforms that may be invaluable to the beneficiaries."*



Bernstein Litowitz
Berger & Grossmann LLP

# RECENT ACTIONS & SIGNIFICANT RECOVERIES

Bernstein Litowitz Berger & Grossmann LLP is counsel in many diverse nationwide class and individual actions and has obtained many of the largest and most significant recoveries in history. Some examples from our practice groups include:

## SECURITIES CLASS ACTIONS

**CASE:** *IN RE WORLDCOM, INC. SECURITIES LITIGATION*

**COURT:** **United States District Court for the Southern District of New York**

**HIGHLIGHTS:** $6.19 billion securities fraud class action recovery – the second largest in history; unprecedented recoveries from Director Defendants.

**CASE SUMMARY:** Investors suffered massive losses in the wake of the financial fraud and subsequent bankruptcy of former telecom giant WorldCom, Inc. This litigation alleged that WorldCom and others disseminated false and misleading statements to the investing public regarding its earnings and financial condition in violation of the federal securities and other laws. It further alleged a nefarious relationship between Citigroup subsidiary Salomon Smith Barney and WorldCom, carried out primarily by Salomon employees involved in providing investment banking services to WorldCom, and by WorldCom's former CEO and CFO. As Court-appointed Co-Lead Counsel representing Lead Plaintiff the **New York State Common Retirement Fund**, we obtained unprecedented settlements totaling more than $6 billion from the Investment Bank Defendants who underwrote WorldCom bonds, including a $2.575 billion cash settlement to settle all claims against the Citigroup Defendants. On the eve of trial, the 13 remaining "Underwriter Defendants," including J.P. Morgan Chase, Deutsche Bank and Bank of America, agreed to pay settlements totaling nearly $3.5 billion to resolve all claims against them. Additionally, the day before trial was scheduled to begin, all of the former WorldCom Director Defendants had agreed to pay over $60 million to settle the claims against them. An unprecedented first for outside directors, $24.75 million of that amount came out of the pockets of the individuals – 20% of their collective net worth. *The Wall Street Journal*, in its coverage, profiled the settlement as literally having "shaken Wall Street, the audit profession and corporate boardrooms." After four weeks of trial, Arthur Andersen, WorldCom's former auditor, settled for $65 million. Subsequent settlements were reached with the former executives of WorldCom, and then with Andersen, bringing the total obtained for the Class to over $6.19 billion.

**CASE:** *IN RE CENDANT CORPORATION SECURITIES LITIGATION*

**COURT:** **United States District Court for the District of New Jersey**

**HIGHLIGHTS:** $3.3 billion securities fraud class action recovery – the third largest in history; significant corporate governance reforms obtained.

**CASE SUMMARY:** The firm was Co-Lead Counsel in this class action against Cendant Corporation, its officers and directors and Ernst & Young (E&Y), its auditors, for their role in disseminating materially false and misleading financial statements concerning the company's revenues, earnings and expenses for its 1997 fiscal year. As a result of company-wide accounting irregularities, Cendant restated its financial results for its 1995, 1996 and 1997 fiscal years and all fiscal quarters therein. Cendant agreed to settle the action for $2.8 billion to adopt some of the most extensive corporate governance changes in history. E&Y settled for $335 million. These settlements remain the largest sums ever recovered from a public company and a public accounting firm through securities class action litigation. BLB&G represented Lead Plaintiffs **CalPERS – the California Public Employees' Retirement System**, the **New York State Common Retirement Fund** and the **New York City Pension Funds**, the three largest public pension funds in America, in this action.



**BLB&G** Bernstein Litowitz
Berger & Grossmann LLP

| | |
|---|---|
| **CASE:** | **IN RE BANK OF AMERICA CORP. SECURITIES, DERIVATIVE, AND EMPLOYEE RETIREMENT INCOME SECURITY ACT (ERISA) LITIGATION** |
| **COURT:** | United States District Court for the Southern District of New York |
| **HIGHLIGHTS:** | $2.425 billion in cash; significant corporate governance reforms to resolve all claims.  This recovery is by far the largest shareholder recovery related to the subprime meltdown and credit crisis; the single largest securities class action settlement ever resolving a Section 14(a) claim – the federal securities provision designed to protect investors against misstatements in connection with a proxy solicitation; the largest ever funded by a single corporate defendant for violations of the federal securities laws; the single largest settlement of a securities class action in which there was neither a financial restatement involved nor a criminal conviction related to the alleged misconduct; and one of the 10 largest securities class action recoveries in history. |
| **DESCRIPTION:** | The firm represented Co-Lead Plaintiffs the **State Teachers Retirement System of Ohio**, the **Ohio Public Employees Retirement System**, and the **Teacher Retirement System of Texas** in this securities class action filed on behalf of shareholders of Bank of America Corporation ("BAC") arising from BAC's 2009 acquisition of Merrill Lynch & Co., Inc.  The action alleges that BAC, Merrill Lynch, and certain of the companies' current and former officers and directors violated the federal securities laws by making a series of materially false statements and omissions in connection with the acquisition.  These violations included the alleged failure to disclose information regarding billions of dollars of losses which Merrill had suffered before the BAC shareholder vote on the proposed acquisition, as well as an undisclosed agreement allowing Merrill to pay billions in bonuses before the acquisition closed despite these losses.  Not privy to these material facts, BAC shareholders voted to approve the acquisition. |

| | |
|---|---|
| **CASE:** | **IN RE NORTEL NETWORKS CORPORATION SECURITIES LITIGATION ("NORTEL II")** |
| **COURT:** | United States District Court for the Southern District of New York |
| **HIGHLIGHTS:** | Over $1.07 billion in cash and common stock recovered for the class. |
| **DESCRIPTION:** | This securities fraud class action charged Nortel Networks Corporation and certain of its officers and directors with violations of the Securities Exchange Act of 1934, alleging that the Defendants knowingly or recklessly made false and misleading statements with respect to Nortel's financial results during the relevant period.  BLB&G clients the **Ontario Teachers' Pension Plan Board** and the **Treasury of the State of New Jersey and its Division of Investment** were appointed as Co-Lead Plaintiffs for the Class in one of two related actions (Nortel II), and BLB&G was appointed Lead Counsel for the Class.  In a historic settlement, Nortel agreed to pay $2.4 billion in cash and Nortel common stock (all figures in US dollars) to resolve both matters.  Nortel later announced that its insurers had agreed to pay $228.5 million toward the settlement, bringing the total amount of the global settlement to approximately $2.7 billion, and the total amount of the Nortel II settlement to over $1.07 billion. |

| | |
|---|---|
| **CASE:** | **IN RE MERCK & CO., INC. SECURITIES LITIGATION** |
| **COURT:** | United States District Court, District of New Jersey |
| **HIGHLIGHTS:** | $1.06 billion recovery for the class. |
| **DESCRIPTION:** | This case arises out of misrepresentations and omissions concerning life-threatening risks posed by the "blockbuster" Cox-2 painkiller Vioxx, which Merck withdrew from the market in 2004.  In January 2016, BLB&G achieved a $1.062 billion settlement on the eve of trial after more than 12 years of hard-fought litigation that included a successful decision at the United States Supreme Court.  This settlement is the second largest recovery ever obtained in the Third Circuit, one of the top 11 securities recoveries of all time, and the largest securities recovery ever achieved against a pharmaceutical company.  BLB&G represented Lead Plaintiff the **Public Employees' Retirement System of Mississippi**. |

**BLB&G** | Bernstein Litowitz
Berger & Grossmann LLP

| | |
|---|---|
| **CASE:** | **IN RE MCKESSON HBOC, INC. SECURITIES LITIGATION** |
| **COURT:** | **United States District Court for the Northern District of California** |
| **HIGHLIGHTS:** | $1.05 billion recovery for the class. |
| **DESCRIPTION:** | This securities fraud litigation was filed on behalf of purchasers of HBOC, McKesson and McKesson HBOC securities, alleging that Defendants misled the investing public concerning HBOC's and McKesson HBOC's financial results.  On behalf of Lead Plaintiff the **New York State Common Retirement Fund**, BLB&G obtained a $960 million settlement from the company; $72.5 million in cash from Arthur Andersen; and, on the eve of trial, a $10 million settlement from Bear Stearns & Co. Inc., with total recoveries reaching more than $1 billion. |

| | |
|---|---|
| **CASE:** | **IN RE LEHMAN BROTHERS EQUITY/DEBT SECURITIES LITIGATION** |
| **COURT:** | **United States District Court for the Southern District of New York** |
| **HIGHLIGHTS:** | $735 million in total recoveries. |
| **DESCRIPTION:** | Representing the **Government of Guam Retirement Fund**, BLB&G successfully prosecuted this securities class action arising from Lehman Brothers Holdings Inc.'s issuance of billions of dollars in offerings of debt and equity securities that were sold using offering materials that contained untrue statements and missing material information.

After four years of intense litigation, Lead Plaintiffs achieved a total of $735 million in recoveries consisting of: a $426 million settlement with underwriters of Lehman securities offerings; a $90 million settlement with former Lehman directors and officers; a $99 million settlement that resolves claims against Ernst & Young, Lehman's former auditor (considered one of the top 10 auditor settlements ever achieved); and a $120 million settlement that resolves claims against UBS Financial Services, Inc.  This recovery is truly remarkable not only because of the difficulty in recovering assets when the issuer defendant is bankrupt, but also because no financial results were restated, and that the auditors never disavowed the statements. |

| | |
|---|---|
| **CASE:** | **HEALTHSOUTH CORPORATION BONDHOLDER LITIGATION** |
| **COURT:** | **United States District Court for the Northern District of Alabama** |
| **HIGHLIGHTS:** | $804.5 million in total recoveries. |
| **DESCRIPTION:** | In this litigation, BLB&G was the appointed Co-Lead Counsel for the bond holder class, representing Lead Plaintiff the **Retirement Systems of Alabama**.  This action arose from allegations that Birmingham, Alabama based HealthSouth Corporation overstated its earnings at the direction of its founder and former CEO Richard Scrushy.  Subsequent revelations disclosed that the overstatement actually exceeded over $2.4 billion, virtually wiping out all of HealthSouth's reported profits for the prior five years.  A total recovery of $804.5 million was obtained in this litigation through a series of settlements, including an approximately $445 million settlement for shareholders and bondholders, a $100 million in cash settlement from UBS AG, UBS Warburg LLC, and individual UBS Defendants (collectively, "UBS"), and $33.5 million in cash from the company's auditor.  The total settlement for injured HealthSouth bond purchasers exceeded $230 million, recouping over a third of bond purchaser damages. |



| | |
|---|---|
| **CASE:** | *IN RE CITIGROUP, INC. BOND ACTION LITIGATION* |
| **COURT:** | **United States District Court for the Southern District of New York** |
| **HIGHLIGHTS:** | $730 million cash recovery; second largest recovery in a litigation arising from the financial crisis. |
| **DESCRIPTION:** | In the years prior to the collapse of the subprime mortgage market, Citigroup issued 48 offerings of preferred stock and bonds. This securities fraud class action was filed on behalf of purchasers of Citigroup bonds and preferred stock alleging that these offerings contained material misrepresentations and omissions regarding Citigroup's exposure to billions of dollars in mortgage-related assets, the loss reserves for its portfolio of high-risk residential mortgage loans, and the credit quality of the risky assets it held in off-balance sheet entities known as "structured investment vehicles." After protracted litigation lasting four years, we obtained a $730 million cash recovery – the second largest securities class action recovery in a litigation arising from the financial crisis, and the second largest recovery ever in a securities class action brought on behalf of purchasers of debt securities.  As Lead Bond Counsel for the Class, BLB&G represented Lead Bond Plaintiffs **Minneapolis Firefighters' Relief Association**, **Louisiana Municipal Police Employees' Retirement System**, and **Louisiana Sheriffs' Pension and Relief Fund**. |

| | |
|---|---|
| **CASE:** | *IN RE WASHINGTON PUBLIC POWER SUPPLY SYSTEM LITIGATION* |
| **COURT:** | **United States District Court for the District of Arizona** |
| **HIGHLIGHTS:** | Over $750 million – the largest securities fraud settlement ever achieved at the time. |
| **DESCRIPTION:** | BLB&G was appointed Chair of the Executive Committee responsible for litigating the action on behalf of the class in this action.  The case was litigated for over seven years, and involved an estimated 200 million pages of documents produced in discovery; the depositions of 285 fact witnesses and 34 expert witnesses; more than 25,000 introduced exhibits; six published district court opinions; seven appeals or attempted appeals to the Ninth Circuit; and a three-month jury trial, which resulted in a settlement of over $750 million – then the largest securities fraud settlement ever achieved. |

| | |
|---|---|
| **CASE:** | *IN RE SCHERING-PLOUGH CORPORATION/ENHANCE SECURITIES LITIGATION; IN RE MERCK & CO., INC. VYTORIN/ZETIA SECURITIES LITIGATION* |
| **COURT:** | **United States District Court for the District of New Jersey** |
| **HIGHLIGHTS:** | $688 million in combined settlements (Schering-Plough settled for $473 million; Merck settled for $215 million) in this coordinated securities fraud litigations filed on behalf of investors in Merck and Schering-Plough. |
| **DESCRIPTION:** | After nearly five years of intense litigation, just days before trial, BLB&G resolved the two actions against Merck and Schering-Plough, which stemmed from claims that Merck and Schering artificially inflated their market value by concealing material information and making false and misleading statements regarding their blockbuster anti-cholesterol drugs Zetia and Vytorin. Specifically, we alleged that the companies knew that their "ENHANCE" clinical trial of Vytorin (a combination of Zetia and a generic) demonstrated that Vytorin was no more effective than the cheaper generic at reducing artery thickness.  The companies nonetheless championed the "benefits" of their drugs, attracting billions of dollars of capital.  When public pressure to release the results of the ENHANCE trial became too great, the companies reluctantly announced these negative results, which we alleged led to sharp declines in the value of the companies' securities, resulting in significant losses to investors.  The combined $688 million in settlements (Schering-Plough settled for $473 million; Merck settled for $215 million) is the second largest securities recovery ever in the Third Circuit, among the top 25 settlements of all time, and among the ten largest recoveries ever in a case where there was no financial restatement.  BLB&G represented Lead Plaintiffs **Arkansas Teacher Retirement System,** the **Public Employees' Retirement System of Mississippi,** and the **Louisiana Municipal Police Employees' Retirement System**. |



**BLB&G** Bernstein Litowitz
Berger & Grossmann LLP

**CASE:**  *IN RE LUCENT TECHNOLOGIES, INC. SECURITIES LITIGATION*

**COURT:**  United States District Court for the District of New Jersey

**HIGHLIGHTS:**  $667 million in total recoveries; the appointment of BLB&G as Co-Lead Counsel is especially noteworthy as it marked the first time since the 1995 passage of the Private Securities Litigation Reform Act that a court reopened the lead plaintiff or lead counsel selection process to account for changed circumstances, new issues and possible conflicts between new and old allegations.

**DESCRIPTION:**  BLB&G served as Co-Lead Counsel in this securities class action, representing Lead Plaintiffs the **Parnassus Fund**, **Teamsters Locals 175 & 505 D&P Pension Trust**, **Anchorage Police and Fire Retirement System** and the **Louisiana School Employees' Retirement System.** The complaint accused Lucent of making false and misleading statements to the investing public concerning its publicly reported financial results and failing to disclose the serious problems in its optical networking business.  When the truth was disclosed, Lucent admitted that it had improperly recognized revenue of nearly $679 million in fiscal 2000.  The settlement obtained in this case is valued at approximately $667 million, and is composed of cash, stock and warrants.

**CASE:**  *IN RE WACHOVIA PREFERRED SECURITIES AND BOND/NOTES LITIGATION*

**COURT:**  United States District Court for the Southern District of New York

**HIGHLIGHTS:**  $627 million recovery – among the 20 largest securities class action recoveries in history; third largest recovery obtained in an action arising from the subprime mortgage crisis.

**DESCRIPTION:**  This securities class action was filed on behalf of investors in certain Wachovia bonds and preferred securities against Wachovia Corp., certain former officers and directors, various underwriters, and its auditor, KPMG LLP. The case alleges that Wachovia provided offering materials that misrepresented and omitted material facts concerning the nature and quality of Wachovia's multi-billion dollar option-ARM (adjustable rate mortgage) "Pick-A-Pay" mortgage loan portfolio, and that Wachovia's loan loss reserves were materially inadequate.  According to the Complaint, these undisclosed problems threatened the viability of the financial institution, requiring it to be "bailed out" during the financial crisis before it was acquired by Wells Fargo. The combined $627 million recovery obtained in the action is among the 20 largest securities class action recoveries in history, the largest settlement ever in a class action case asserting only claims under the Securities Act of 1933, and one of a handful of securities class action recoveries obtained where there were no parallel civil or criminal actions brought by government authorities. The firm represented Co-Lead Plaintiffs **Orange County Employees Retirement System** and **Louisiana Sheriffs' Pension and Relief Fund** in this action.

**CASE:**  *BEAR STEARNS MORTGAGE PASS-THROUGH LITIGATION*

**COURT:**  United States District Court for the Southern District of New York

**HIGHLIGHTS:**  **$500 million recovery -** the largest recovery ever on behalf of purchasers of residential mortgage-backed securities.

**DESCRIPTION:**  **BLB&G served as Co-Lead Counsel in this securities action, representing Lead Plaintiffs the Public Employees' Retirement System of Mississippi. The case alleged that Bear Stearns & Company, Inc.'s sold mortgage pass-through certificates using false and misleading offering documents.  The offering documents contained false and misleading statements related to, among other things, (1) the underwriting guidelines used to originate the mortgage loans underlying the certificates; and (2) the accuracy of the appraisals for the properties underlying the certificates. After six years of hard-fought litigation and extensive arm's-length negotiations, the $500 million recovery is the largest settlement in a U.S. class action against a bank that packaged and sold mortgage securities at the center of the 2008 financial crisis.**

**BLB&G** Bernstein Litowitz
Berger & Grossmann LLP

| | |
|---|---|
| *CASE:* | *GARY HEFLER ET AL. v. WELLS FARGO & COMPANY ET AL* |
| *COURT:* | **United States District Court for the Northern District of California** |
| *HIGHLIGHTS:* | $480 million recovery - the fourth largest securities settlement ever achieved in the Ninth Circuit and the 31st largest securities settlement ever in the United States. |
| *DESCRIPTION:* | BLB&G served as Lead Counsel for the Court-appointed Lead Plaintiff Union Asset Management Holding, AG in this action, which alleged that Wells Fargo and certain current and former officers and directors of Wells Fargo made a series of materially false statements and omissions in connection with Wells Fargo's secret creation of fake or unauthorized client accounts in order to hit performance-based compensation goals. After years of presenting a business driven by legitimate growth prospects, U.S. regulators revealed in September 2016 that Wells Fargo employees were secretly opening millions of potentially unauthorized accounts for existing Wells Fargo customers. The Complaint alleged that these accounts were opened in order to hit performance targets and inflate the "cross-sell" metrics that investors used to measure Wells Fargo's financial health and anticipated growth. When the market learned the truth about Wells Fargo's violation of its customers' trust and failure to disclose reliable information to its investors, the price of Wells Fargo's stock dropped, causing substantial investor losses. |

| | |
|---|---|
| *CASE:* | *OHIO PUBLIC EMPLOYEES RETIREMENT SYSTEM v. FREDDIE MAC* |
| *COURT:* | **United States District Court for the Southern District of Ohio** |
| *HIGHLIGHTS:* | $410 million settlement. |
| *DESCRIPTION:* | This securities fraud class action was filed on behalf of the **Ohio Public Employees Retirement System** and the **State Teachers Retirement System of Ohio** alleging that Federal Home Loan Mortgage Corporation ("Freddie Mac") and certain of its current and former officers issued false and misleading statements in connection with the company's previously reported financial results. Specifically, the Complaint alleged that the Defendants misrepresented the company's operations and financial results by having engaged in numerous improper transactions and accounting machinations that violated fundamental GAAP precepts in order to artificially smooth the company's earnings and to hide earnings volatility. In connection with these improprieties, Freddie Mac restated more than $5 billion in earnings. A settlement of $410 million was reached in the case just as deposition discovery had begun and document review was complete. |

| | |
|---|---|
| *CASE:* | *IN RE REFCO, INC. SECURITIES LITIGATION* |
| *COURT:* | **United States District Court for the Southern District of New York** |
| *HIGHLIGHTS:* | Over $407 million in total recoveries. |
| *DESCRIPTION:* | The lawsuit arises from the revelation that Refco, a once prominent brokerage, had for years secreted hundreds of millions of dollars of uncollectible receivables with a related entity controlled by Phillip Bennett, the company's Chairman and Chief Executive Officer. This revelation caused the stunning collapse of the company a mere two months after its initial public offering of common stock. As a result, Refco filed one of the largest bankruptcies in U.S. history. Settlements have been obtained from multiple company and individual defendants, resulting in a total recovery for the class of over $407 million. BLB&G represented Co-Lead Plaintiff **RH Capital Associates LLC**. |



**BLB&G** Bernstein Litowitz
Berger & Grossmann LLP

# CORPORATE GOVERNANCE AND SHAREHOLDERS' RIGHTS

**CASE:** *CITY OF MONROE EMPLOYEES' RETIREMENT SYSTEM, DERIVATIVELY ON BEHALF OF TWENTY-FIRST CENTURY FOX, INC. V. RUPERT MURDOCH, ET AL.*

**COURT:** Delaware Court of Chancery

**HIGHLIGHTS:** Landmark derivative litigation establishes unprecedented, independent Board-level council to ensure employees are protected from workplace harassment while recouping $90 million for the company's coffers.

**DESCRIPTION:** Before the birth of the #metoo movement, BLB&G led the prosecution of an unprecedented shareholder derivative litigation against Fox News parent 21st Century Fox, Inc. arising from the systemic sexual and workplace harassment at the embattled network. After nearly 18 months of litigation, discovery and negotiation related to the shocking misconduct and the Board's extensive alleged governance failures, the parties unveil a landmark settlement with two key components: 1) the first ever Board-level watchdog of its kind – the "Fox News Workplace Professionalism and Inclusion Council" of experts (WPIC) – majority independent of the Murdochs, the Company and Board; and 2) one of the largest financial recoveries – $90 million – ever obtained in a pure corporate board oversight dispute.  The WPIC is expected to serve as a model for public companies in all industries. The firm represented 21st Century Fox shareholder the **City of Monroe (Michigan) Employees' Retirement System.**

**CASE:** *IN RE ALLERGAN, INC. PROXY VIOLATION SECURITIES LITIGATION*

**COURT:** United States District Court for the Central District of California

**HIGHLIGHTS:** Litigation recovered over $250 million for investors in challenging unprecedented insider trading scheme by billionaire hedge fund manager Bill Ackman.

**DESCRIPTION:** As alleged in groundbreaking litigation, billionaire hedge fund manager Bill Ackman and his Pershing Square Capital Management fund secretly acquire a near 10% stake in pharmaceutical concern Allergan, Inc. as part of an unprecedented insider trading scheme by Ackman and Valeant Pharmaceuticals International, Inc.  What Ackman knew – but investors did not – was that in the ensuing weeks, Valeant would be launching a hostile bid to acquire Allergan shares at a far higher price.  Ackman enjoys a massive instantaneous profit upon public news of the proposed acquisition, and the scheme works for both parties as he kicks back hundreds of millions of his insider-trading proceeds to Valeant after Allergan agreed to be bought by a rival bidder.  After a ferocious three-year legal battle over this attempt to circumvent the spirit of the U.S. securities laws, BLB&G obtains a $250 million settlement for Allergan investors, and creates precedent to prevent similar such schemes in the future.  The Plaintiffs in this action were the **State Teachers Retirement System of Ohio**, the **Iowa Public Employees Retirement System**, and **Patrick T. Johnson.**


**BLB&G** Bernstein Litowitz
Berger & Grossmann LLP

| | |
|---|---|
| *CASE:* | ***UNITEDHEALTH GROUP, INC. SHAREHOLDER DERIVATIVE LITIGATION*** |
| *COURT:* | **United States District Court for the District of Minnesota** |
| *HIGHLIGHTS:* | Litigation recovered over $920 million in ill-gotten compensation directly from former officers for their roles in illegally backdating stock options, while the company agreed to far-reaching reforms aimed at curbing future executive compensation abuses. |
| *DESCRIPTION:* | This shareholder derivative action filed against certain current and former executive officers and members of the Board of Directors of UnitedHealth Group, Inc. alleged that the Defendants obtained, approved and/or acquiesced in the issuance of stock options to senior executives that were unlawfully backdated to provide the recipients with windfall compensation at the direct expense of UnitedHealth and its shareholders.  The firm recovered over $920 million in ill-gotten compensation directly from the former officer Defendants – the largest derivative recovery in history.  As feature coverage in *The New York Times* indicated, "investors everywhere should applaud [the UnitedHealth settlement]…. [T]he recovery sets a standard of behavior for other companies and boards when performance pay is later shown to have been based on ephemeral earnings."  The Plaintiffs in this action were the **St. Paul Teachers' Retirement Fund Association**, the **Public Employees' Retirement System of Mississippi**, the **Jacksonville Police & Fire Pension Fund**, the **Louisiana Sheriffs' Pension & Relief Fund**, the **Louisiana Municipal Police Employees' Retirement System** and **Fire & Police Pension Association of Colorado**. |

| | |
|---|---|
| *CASE:* | ***CAREMARK MERGER LITIGATION*** |
| *COURT:* | **Delaware Court of Chancery – New Castle County** |
| *HIGHLIGHTS:* | Landmark Court ruling orders Caremark's board to disclose previously withheld information, enjoins shareholder vote on CVS merger offer, and grants statutory appraisal rights to Caremark shareholders.  The litigation ultimately forced CVS to raise offer by $7.50 per share, equal to more than $3.3 billion in additional consideration to Caremark shareholders. |
| *DESCRIPTION:* | Commenced on behalf of the **Louisiana Municipal Police Employees' Retirement System** and other shareholders of Caremark RX, Inc. ("Caremark"), this shareholder class action accused the company's directors of violating their fiduciary duties by approving and endorsing a proposed merger with CVS Corporation ("CVS"), all the while refusing to fairly consider an alternative transaction proposed by another bidder.  In a landmark decision, the Court ordered the Defendants to disclose material information that had previously been withheld, enjoined the shareholder vote on the CVS transaction until the additional disclosures occurred, and granted statutory appraisal rights to Caremark's shareholders—forcing CVS to increase the consideration offered to shareholders by $7.50 per share in cash (over $3 billion in total). |

| | |
|---|---|
| *CASE:* | ***IN RE PFIZER INC. SHAREHOLDER DERIVATIVE LITIGATION*** |
| *COURT:* | **United States District Court for the Southern District of New York** |
| *HIGHLIGHTS:* | Landmark settlement in which Defendants agreed to create a new Regulatory and Compliance Committee of the Pfizer Board that will be supported by a dedicated $75 million fund. |
| *DESCRIPTION:* | In the wake of Pfizer's agreement to pay $2.3 billion as part of a settlement with the U.S. Department of Justice to resolve civil and criminal charges relating to the illegal marketing of at least 13 of the company's most important drugs (the largest such fine ever imposed), this shareholder derivative action was filed against Pfizer's senior management and Board alleging they breached their fiduciary duties to Pfizer by, among other things, allowing unlawful promotion of drugs to continue after receiving numerous "red flags" that Pfizer's improper drug marketing was systemic and widespread.  The suit was brought by Court-appointed Lead Plaintiffs **Louisiana Sheriffs' Pension and Relief Fund** and **Skandia Life Insurance Company, Ltd.**  In an unprecedented settlement reached by the parties, the Defendants agreed to create a new Regulatory |



and Compliance Committee of the Pfizer Board of Directors (the "Regulatory Committee") to oversee and monitor Pfizer's compliance and drug marketing practices and to review the compensation policies for Pfizer's drug sales related employees.

| | |
|---|---|
| **CASE:** | ***MILLER ET A. V. IAC/INTERACTIVECORP ET AL.*** |
| **COURT:** | **Delaware Court of Chancery** |
| **HIGHLIGHTS:** | Litigation shuts down efforts by controlling shareholders to obtain "dynastic control" of the company through improper stock class issuances, setting valuable precedent and sending strong message to boards and management in all sectors that such moves will not go unchallenged. |
| **DESCRIPTION:** | BLB&G obtained this landmark victory for shareholder rights against IAC/InterActiveCorp and its controlling shareholder and chairman, Barry Diller. For decades, activist corporate founders and controllers seek ways to entrench their position atop the corporate hierarchy by granting themselves and other insiders "supervoting rights."  Diller lays out a proposal to introduce a new class of non-voting stock to entrench "dynastic control" of IAC within the Diller family.  BLB&G litigation on behalf of IAC shareholders ends in capitulation with the Defendants effectively conceding the case by abandoning the proposal.  This becomes critical corporate governance precedent, given trend of public companies to introduce "low" and "no-vote" share classes, which diminish shareholder rights, insulate management from accountability, and can distort managerial incentives by providing controllers voting power out of line with their actual economic interests in public companies. |

| | |
|---|---|
| **CASE:** | ***IN RE DELPHI FINANCIAL GROUP SHAREHOLDER LITIGATION*** |
| **COURT:** | **Delaware Court of Chancery – New Castle County** |
| **HIGHLIGHTS:** | Dominant shareholder is blocked from collecting a payoff at the expense of minority investors. |
| **DESCRIPTION:** | As the Delphi Financial Group prepared to be acquired by Tokio Marine Holdings Inc., the conduct of Delphi's founder and controlling shareholder drew the scrutiny of BLB&G and its institutional investor clients for improperly using the transaction to expropriate at least $55 million at the expense of the public shareholders.  BLB&G aggressively litigated this action and obtained a settlement of $49 million for Delphi's public shareholders. The settlement fund is equal to about 90% of recoverable Class damages – a virtually unprecedented recovery. |

| | |
|---|---|
| **CASE:** | ***QUALCOMM BOOKS & RECORDS LITIGATION*** |
| **COURT:** | **Delaware Court of Chancery – New Castle County** |
| **HIGHLIGHTS:** | Novel use of "books and records" litigation enhances disclosure of political spending and transparency. |
| **DESCRIPTION:** | The U.S. Supreme Court's controversial 2010 opinion in *Citizens United v. FEC* made it easier for corporate directors and executives to secretly use company funds – shareholder assets – to support personally favored political candidates or causes.  BLB&G prosecuted the first-ever "books and records" litigation to obtain disclosure of corporate political spending at our client's portfolio company – technology giant Qualcomm Inc. – in response to Qualcomm's refusal to share the information.  As a result of the lawsuit, Qualcomm adopted a policy that provides its shareholders with comprehensive disclosures regarding the company's political activities and places Qualcomm as a standard-bearer for other companies. |



| | |
|---|---|
| **CASE:** | **IN RE NEWS CORP. SHAREHOLDER DERIVATIVE LITIGATION** |
| **COURT:** | **Delaware Court of Chancery – Kent County** |
| **HIGHLIGHTS:** | An unprecedented settlement in which News Corp. recoups $139 million and enacts significant corporate governance reforms that combat self-dealing in the boardroom. |
| **DESCRIPTION:** | Following News Corp.'s 2011 acquisition of a company owned by News Corp. Chairman and CEO Rupert Murdoch's daughter, and the phone-hacking scandal within its British newspaper division, we filed a derivative litigation on behalf of the company because of institutional shareholder concern with the conduct of News Corp.'s management.  We ultimately obtained an unprecedented settlement in which News Corp. recouped $139 million for the company coffers, and agreed to enact corporate governance enhancements to strengthen its compliance structure, the independence and functioning of its board, and the compensation and clawback policies for management. |

| | |
|---|---|
| **CASE:** | **IN RE ACS SHAREHOLDER LITIGATION (XEROX)** |
| **COURT:** | **Delaware Court of Chancery – New Castle County** |
| **HIGHLIGHTS:** | BLB&G challenged an attempt by ACS CEO to extract a premium on his stock not shared with the company's public shareholders in a sale of ACS to Xerox.  On the eve of trial, BLB&G obtained a $69 million recovery, with a substantial portion of the settlement personally funded by the CEO. |
| **DESCRIPTION:** | Filed on behalf of the **New Orleans Employees' Retirement System** and similarly situated shareholders of Affiliated Computer Service, Inc., this action alleged that members of the Board of Directors of ACS breached their fiduciary duties by approving a merger with Xerox Corporation which would allow Darwin Deason, ACS's founder and Chairman and largest stockholder, to extract hundreds of millions of dollars of value that rightfully belongs to ACS's public shareholders for himself.  Per the agreement, Deason's consideration amounted to over a 50% premium when compared to the consideration paid to ACS's public stockholders. The ACS Board further breached its fiduciary duties by agreeing to certain deal protections in the merger agreement that essentially locked up the transaction between ACS and Xerox. After seeking a preliminary injunction to enjoin the deal and engaging in intense discovery and litigation in preparation for a looming trial date, Plaintiffs reached a global settlement with Defendants for $69 million.  In the settlement, Deason agreed to pay $12.8 million, while ACS agreed to pay the remaining $56.1 million. |

| | |
|---|---|
| **CASE:** | **IN RE DOLLAR GENERAL CORPORATION SHAREHOLDER LITIGATION** |
| **COURT:** | **Sixth Circuit Court for Davidson County, Tennessee; Twentieth Judicial District, Nashville** |
| **HIGHLIGHTS:** | Holding Board accountable for accepting below-value "going private" offer. |
| **DESCRIPTION:** | A Nashville, Tennessee corporation that operates retail stores selling discounted household goods, in early March 2007, Dollar General announced that its Board of Directors had approved the acquisition of the company by the private equity firm Kohlberg Kravis Roberts & Co. ("KKR").  BLB&G, as Co-Lead Counsel for the **City of Miami General Employees' & Sanitation Employees' Retirement Trust**, filed a class action complaint alleging that the "going private" offer was approved as a result of breaches of fiduciary duty by the board and that the price offered by KKR did not reflect the fair value of Dollar General's publicly-held shares.  On the eve of the summary judgment hearing, KKR agreed to pay a $40 million settlement in favor of the shareholders, with a potential for $17 million more for the Class. |

**BLB&G** Bernstein Litowitz
Berger & Grossmann LLP

| | |
|---|---|
| CASE: | *LANDRY'S RESTAURANTS, INC. SHAREHOLDER LITIGATION* |
| COURT: | **Delaware Court of Chancery – New Castle County** |
| HIGHLIGHTS: | Protecting shareholders from predatory CEO's multiple attempts to take control of Landry's Restaurants through improper means.  Our litigation forced the CEO to increase his buyout offer by four times the price offered and obtained an additional $14.5 million cash payment for the class. |
| DESCRIPTION: | In this derivative and shareholder class action, shareholders alleged that Tilman J. Fertitta – chairman, CEO and largest shareholder of Landry's Restaurants, Inc. – and its Board of Directors stripped public shareholders of their controlling interest in the company for no premium and severely devalued remaining public shares in breach of their fiduciary duties.  BLB&G's prosecution of the action on behalf of Plaintiff **Louisiana Municipal Police Employees' Retirement System** resulted in recoveries that included the creation of a settlement fund composed of $14.5 million in cash, as well as significant corporate governance reforms and an increase in consideration to shareholders of the purchase price valued at $65 million. |



Bernstein Litowitz
Berger & Grossmann LLP

# EMPLOYMENT DISCRIMINATION AND CIVIL RIGHTS

**CASE:** *ROBERTS V. TEXACO, INC.*

**COURT:** United States District Court for the Southern District of New York

**HIGHLIGHTS:** BLB&G recovered $170 million on behalf of Texaco's African-American employees and engineered the creation of an independent "Equality and Tolerance Task Force" at the company.

**DESCRIPTION:** Six highly qualified African-American employees filed a class action complaint against Texaco Inc. alleging that the company failed to promote African-American employees to upper level jobs and failed to compensate them fairly in relation to Caucasian employees in similar positions. BLB&G's prosecution of the action revealed that African-Americans were significantly under-represented in high level management jobs and that Caucasian employees were promoted more frequently and at far higher rates for comparable positions within the company. The case settled for over $170 million, and Texaco agreed to a Task Force to monitor its diversity programs for five years – a settlement described as the most significant race discrimination settlement in history.

**CASE:** *ECOA - GMAC/NMAC/FORD/TOYOTA/CHRYSLER - CONSUMER FINANCE DISCRIMINATION LITIGATION*

**COURT:** Multiple jurisdictions

**HIGHLIGHTS:** Landmark litigation in which financing arms of major auto manufacturers are compelled to cease discriminatory "kick-back" arrangements with dealers, leading to historic changes to auto financing practices nationwide.

**DESCRIPTION:** The cases involve allegations that the lending practices of General Motors Acceptance Corporation, Nissan Motor Acceptance Corporation, Ford Motor Credit, Toyota Motor Credit and DaimlerChrysler Financial cause African-American and Hispanic car buyers to pay millions of dollars more for car loans than similarly situated white buyers. At issue is a discriminatory kickback system under which minorities typically pay about 50% more in dealer mark-up which is shared by auto dealers with the Defendants.

*NMAC:* The United States District Court for the Middle District of Tennessee granted final approval of the settlement of the class action against Nissan Motor Acceptance Corporation ("NMAC") in which NMAC agreed to offer pre-approved loans to hundreds of thousands of current and potential African-American and Hispanic NMAC customers, and limit how much it raises the interest charged to car buyers above the company's minimum acceptable rate.

*GMAC:* The United States District Court for the Middle District of Tennessee granted final approval of a settlement of the litigation against General Motors Acceptance Corporation ("GMAC") in which GMAC agreed to take the historic step of imposing a 2.5% markup cap on loans with terms up to 60 months, and a cap of 2% on extended term loans. GMAC also agreed to institute a substantial credit pre-approval program designed to provide special financing rates to minority car buyers with special rate financing.

*DAIMLERCHRYSLER:* The United States District Court for the District of New Jersey granted final approval of the settlement in which DaimlerChrysler agreed to implement substantial changes to the company's practices, including limiting the maximum amount of mark-up dealers may charge customers to between 1.25% and 2.5% depending upon the length of the customer's loan. In addition, the company agreed to send out pre-approved credit offers of no-markup loans to African-American and Hispanic consumers, and contribute $1.8 million to provide consumer education and assistance programs on credit financing.

*FORD MOTOR CREDIT:* The United States District Court for the Southern District of New York granted final approval of a settlement in which Ford Credit agreed to make contract disclosures informing consumers that the customer's Annual Percentage Rate ("APR") may be negotiated and that sellers may assign their contracts and retain rights to receive a portion of the finance charge.



## CLIENTS AND FEES

We are firm believers in the contingency fee as a socially useful, productive and satisfying basis of compensation for legal services, particularly in litigation.  Wherever appropriate, even with our corporate clients, we will encourage retention where our fee is contingent on the outcome of the litigation.  This way, it is not the number of hours worked that will determine our fee, but rather the result achieved for our client.

Our clients include many large and well known financial and lending institutions and pension funds, as well as privately-held companies that are attracted to our firm because of our reputation, expertise and fee structure. Most of the firm's clients are referred by other clients, law firms and lawyers, bankers, investors and accountants.  A considerable number of clients have been referred to the firm by former adversaries.  We have always maintained a high level of independence and discretion in the cases we decide to prosecute.  As a result, the level of personal satisfaction and commitment to our work is high.



# IN THE PUBLIC INTEREST

Bernstein Litowitz Berger & Grossmann LLP is guided by two principles: excellence in legal work and a belief that the law should serve a socially useful and dynamic purpose. Attorneys at the firm are active in academic, community and *pro bono* activities, as well as participating as speakers and contributors to professional organizations. In addition, the firm endows a public interest law fellowship and sponsors an academic scholarship at Columbia Law School.

## BERNSTEIN LITOWITZ BERGER & GROSSMANN PUBLIC INTEREST LAW FELLOWS

COLUMBIA LAW SCHOOL – BLB&G is committed to fighting discrimination and effecting positive social change. In support of this commitment, the firm donated funds to Columbia Law School to create the Bernstein Litowitz Berger & Grossmann Public Interest Law Fellowship. This newly endowed fund at Columbia Law School will provide Fellows with 100% of the funding needed to make payments on their law school tuition loans so long as such graduates remain in the public interest law field. The BLB&G Fellows are able to begin their careers free of any school debt if they make a long-term commitment to public interest law.

## FIRM SPONSORSHIP OF HER JUSTICE

NEW YORK, NY – BLB&G is a sponsor of Her Justice, a non-profit organization in New York City dedicated to providing *pro bono* legal representation to indigent women, principally battered women, in connection with the myriad legal problems they face. The organization trains and supports the efforts of New York lawyers who provide *pro bono* counsel to these women. Several members and associates of the firm volunteer their time to help women who need divorces from abusive spouses, or representation on issues such as child support, custody and visitation. To read more about Her Justice, visit the organization's website at www.herjustice.org.

## THE PAUL M. BERNSTEIN MEMORIAL SCHOLARSHIP

COLUMBIA LAW SCHOOL – Paul M. Bernstein was the founding senior partner of the firm. Mr. Bernstein led a distinguished career as a lawyer and teacher and was deeply committed to the professional and personal development of young lawyers. The Paul M. Bernstein Memorial Scholarship Fund is a gift of the firm and the family and friends of Paul M. Bernstein, and is awarded annually to one or more second-year students selected for their academic excellence in their first year, professional responsibility, financial need and contributions to the community.

## FIRM SPONSORSHIP OF CITY YEAR NEW YORK

NEW YORK, NY – BLB&G is also an active supporter of City Year New York, a division of AmeriCorps. The program was founded in 1988 as a means of encouraging young people to devote time to public service and unites a diverse group of volunteers for a demanding year of full-time community service, leadership development and civic engagement. Through their service, corps members experience a rite of passage that can inspire a lifetime of citizenship and build a stronger democracy.

## MAX W. BERGER PRE-LAW PROGRAM

BARUCH COLLEGE – In order to encourage outstanding minority undergraduates to pursue a meaningful career in the legal profession, the Max W. Berger Pre-Law Program was established at Baruch College. Providing workshops, seminars, counseling and mentoring to Baruch students, the program facilitates and guides them through the law school research and application process, as well as placing them in appropriate internships and other pre-law working environments.

## NEW YORK SAYS THANK YOU FOUNDATION

NEW YORK, NY – Founded in response to the outpouring of love shown to New York City by volunteers from all over the country in the wake of the 9/11 attacks, The New York Says Thank You Foundation sends volunteers from New York City to help rebuild communities around the country affected by disasters. BLB&G is a corporate sponsor of NYSTY and its goals are a heartfelt reflection of the firm's focus on community and activism.



Bernstein Litowitz
Berger & Grossmann LLP

# OUR ATTORNEYS

## MEMBERS

**MAX W. BERGER**, the firm's senior founding partner, has grown BLB&G from a partnership of four lawyers in 1983 into what the *Financial Times* described as "one of the most powerful securities class action law firms in the United States" by prosecuting seminal cases which have increased market transparency, held wrongdoers accountable, and improved corporate business practices in groundbreaking ways.

Described by sources quoted in leading industry publication *Chambers USA* as "the smartest, most strategic plaintiffs' lawyer [they have] ever encountered," Max has litigated many of the firm's most high-profile and significant cases and secured some of the largest recoveries ever achieved in securities fraud lawsuits, negotiating seven of the largest securities fraud settlements in history, each in excess of a billion dollars: *Cendant* ($3.3 billion), *Citigroup-WorldCom* ($2.575 billion), *Bank of America/Merrill Lynch* ($2.4 billion), *JPMorgan Chase-WorldCom* ($2 billion), *Nortel* ($1.07 billion), *Merck* ($1.06 billion), and *McKesson* ($1.05 billion).

Most recently, before the #metoo movement came alive, on behalf of an institutional investor client, Max handled the prosecution of an unprecedented shareholder derivative litigation against Fox News parent 21st Century Fox, Inc. arising from the systemic sexual and workplace harassment at the embattled network. After nearly 18 months of litigation, discovery, and negotiation related to the shocking misconduct and the Board's extensive alleged governance failures, the parties unveiled a landmark settlement with two key components: 1) the first ever Board-level watchdog of its kind – the "Fox News Workplace Professionalism and Inclusion Council" of experts (WPIC) – majority independent of the Murdochs, the Company and Board; and 2) one of the largest financial recoveries – $90 million – ever obtained in a pure corporate board oversight dispute.  The WPIC is expected to serve as a model for public companies in all industries.

Max's work has garnered him extensive media attention, and he has been the subject of feature articles in a variety of major media publications. *The New York Times* highlighted his remarkable track record in an October 2012 profile entitled "Investors' Billion-Dollar Fraud Fighter," which also discussed his role in the *Bank of America/Merrill Lynch Merger* litigation.  In 2011, Max was twice profiled by *The American Lawyer* for his role in negotiating a $627 million recovery on behalf of investors in the *In re Wachovia Corp. Securities Litigation,* and a $516 million recovery in *In re Lehman Brothers Equity/Debt Securities Litigation.* For his outstanding efforts on behalf of WorldCom investors, he was featured in articles in *BusinessWeek* and *The American Lawyer*, and *The National Law Journal* profiled Max (one of only eleven attorneys selected nationwide) in its annual 2005 "Winning Attorneys" section. He was subsequently featured in a 2006 *New York Times* article, "A Class-Action Shuffle," which assessed the evolving landscape of the securities litigation arena.

**One of the "100 Most Influential Lawyers in America"**

Widely recognized as the "Dean" of the US plaintiff securities bar for his remarkable career and his professional excellence, Max has a distinguished and unparalleled list of honors to his name.

- He was selected as one of the "100 Most Influential Lawyers in America" by *The National Law Journal* for being "front and center" in holding Wall Street banks accountable and obtaining over $5 billion in cases arising from the subprime meltdown, and for his work as a "master negotiator" in obtaining numerous multi-billion dollar recoveries for investors.



- Described as a "standard-bearer" for the profession in a career spanning over 40 years, he was the recipient of *Chambers USA's* award for Outstanding Contribution to the Legal Profession. In presenting this prestigious honor, *Chambers* recognized Max's "numerous headline-grabbing successes," as well as his unique stature among colleagues – "warmly lauded by his peers, who are nevertheless loath to find him on the other side of the table." Max has been recognized as a litigation "star" and leading lawyer in his field by *Chambers* since its inception.

- *Benchmark Litigation* recently inducted him into its exclusive "Hall of Fame" in recognition of his career achievements and impact on the field of securities litigation.

- Upon its tenth anniversary, *Lawdragon* named Max a "Lawdragon Legend" for his accomplishments. He was recently inducted into *Lawdragon's* "Hall of Fame." He is regularly included in the publication's "500 Leading Lawyers in America" and "100 Securities Litigators You Need to Know" lists.

- *Law360* published a special feature discussing his life and career as a "Titan of the Plaintiffs Bar," named him one of only six litigators selected nationally as a "Legal MVP," and selected him as one of "10 Legal Superstars" nationally for his work in securities litigation.

- Max has been regularly named a "leading lawyer" in the *Legal 500 US Guide*, as well as *The Best Lawyers in America*® guide.

- Max was honored for his outstanding contribution to the public interest by Trial Lawyers for Public Justice, which named him a "Trial Lawyer of the Year" Finalist in 1997 for his work in *Roberts, et al. v. Texaco*, the celebrated race discrimination case, on behalf of Texaco's African-American employees.

Max has lectured extensively for many professional organizations, and is the author and co-author of numerous articles on developments in the securities laws and their implications for public policy. He was chosen, along with several of his BLB&G partners, to author the first chapter – "Plaintiffs' Perspective" – of Lexis/Nexis's seminal industry guide *Litigating Securities Class Actions*. An esteemed voice on all sides of the legal and financial markets, in 2008 the SEC and Treasury called on Max to provide guidance on regulatory changes being considered as the accounting profession was experiencing tectonic shifts shortly before the financial crisis.

Max also serves the academic community in numerous capacities. A long-time member of the Board of Trustees of Baruch College, he served as the President of the Baruch College Fund from 2015-2019 and now serves as its Chairman. In May 2006, he was presented with the Distinguished Alumnus Award for his contributions to Baruch College, and in 2019, was awarded an honorary Doctor of Laws degree at Baruch's commencement, the highest honor Baruch College confers upon an individual for non-academic achievement. The award recognized his decades-long dedication to the mission and vision of the College, and in bestowing it, Baruch described Max as "one of the most influential individuals in the history of Baruch College."

A member of the Dean's Council to Columbia Law School, Max has taught Profession of Law, an ethics course at Columbia Law School, and serves on the Advisory Board of Columbia Law School's Center on Corporate Governance. In February 2011, Max received Columbia Law School's most prestigious and highest honor, "The Medal for Excellence." This award is presented annually to Columbia Law School alumni who exemplify the qualities of character, intellect, and social and professional responsibility that the Law School seeks to instill in its students. As a recipient of this award, Max was profiled in the Fall 2011 issue of *Columbia Law School Magazine.* Max is a member of the American Law Institute and an Advisor to its Restatement Third: Economic Torts project.

Among numerous charitable and volunteer works, Max is a significant and long-time contributor to Her Justice, a non-profit organization in New York City dedicated to providing *pro bono* legal representation to indigent women, principally battered women, in connection with the many legal problems they face. He is also an active supporter of City Year New York, a division of



AmeriCorps, dedicated to encouraging young people to devote time to public service. In July 2005, he was named City Year New York's "Idealist of the Year," for his commitment to, service for, and work in the community. A celebrated photographer, Max has held two successful photography shows that raised hundreds of thousands of dollars for City Year and Her Justice. He and his wife, Dale, have also established the Dale and Max Berger Public Interest Law Fellowship at Columbia Law School and the Max Berger Pre-Law Program at Baruch College.

EDUCATION: Baruch College-City University of New York, B.B.A., Accounting, 1968; President of the student body and recipient of numerous awards.  Columbia Law School, J.D., 1971, Editor of the *Columbia Survey of Human Rights Law*.

BAR ADMISSIONS: New York; U.S. District Courts for the Eastern and Southern Districts of New York; U.S. Court of Appeals for the Second Circuit; U.S. Supreme Court.

**GERALD H. SILK**'S practice focuses on representing institutional investors on matters involving federal and state securities laws, accountants' liability, and the fiduciary duties of corporate officials, as well as general commercial and corporate litigation.  He also advises creditors on their rights with respect to pursuing affirmative claims against officers and directors, as well as professionals both inside and outside the bankruptcy context.

Jerry is a member of the firm's Management Committee. He also oversees the firm's New Matter department in which he, along with a group of attorneys, financial analysts and investigators, counsels institutional clients on potential legal claims. In December 2014, Jerry was recognized by *The National Law Journal* in its inaugural list of "Litigation Trailblazers & Pioneers" — one of several lawyers in the country who have changed the practice of litigation through the use of innovative legal strategies — in no small part for the critical role he has played in helping the firm's investor clients recover billions of dollars in litigation arising from the financial crisis, among other matters.

In addition, *Lawdragon* magazine, which has named Jerry one of the "100 Securities Litigators You Need to Know," one of the "500 Leading Lawyers in America" and one of America's top 500 "Rising Stars" in the legal profession, also profiled him as part of its "Lawyer Limelight" special series, discussing subprime litigation, his passion for plaintiffs' work and the trends he expects to see in the market. Recognized as one of an elite group of notable practitioners, *Chambers USA's* ranked Jerry nationally "for his expertise in a range of cases on the plaintiff side." He is also named as a "Litigation Star" by *Benchmark*, is recommended by the Legal 500 USA guide in the field of plaintiffs' securities litigation, and has been selected by Thomson Reuters as a *Super Lawyer* every year since 2006.

In the wake of the financial crisis, he advised the firm's institutional investor clients on their rights with respect to claims involving transactions in residential mortgage-backed securities (RMBS) and collateralized debt obligations (CDOs).  His work representing Cambridge Place Investment Management Inc. on claims under Massachusetts state law against numerous investment banks arising from the purchase of billions of dollars of RMBS was featured in a 2010 *New York Times* article by Gretchen Morgenson titled, "Mortgage Investors Turn to State Courts for Relief."

Jerry also represented the New York State Teachers' Retirement System in a securities litigation against the General Motors Company arising from a series of misrepresentations concerning the quality, safety, and reliability of the Company's cars, which resulted in a $300 million settlement. He was also a member of the litigation team responsible for the successful prosecution of *In re Cendant Corporation Securities Litigation* in the District of New Jersey, which was resolved for $3.2 billion.  In addition, he is actively involved in the firm's prosecution of highly successful M&A litigation, representing shareholders in widely publicized lawsuits, including the litigation arising from the proposed acquisition of Caremark Rx, Inc. by CVS Corporation — which led to an increase of approximately $3.5 billion in the consideration offered to shareholders.



A graduate of the Wharton School of Business, University of Pennsylvania and Brooklyn Law School, in 1995-96, Jerry served as a law clerk to the Hon. Steven M. Gold, U.S.M.J., in the United States District Court for the Eastern District of New York.

Jerry lectures to institutional investors at conferences throughout the country, and has written or substantially contributed to several articles on developments in securities and corporate law, including "Improving Multi-Jurisdictional, Merger-Related Litigation," American Bar Association (February 2011); "The Compensation Game," *Lawdragon*, Fall 2006; "Institutional Investors as Lead Plaintiffs: Is There A New And Changing Landscape?," 75 *St. John's Law Review* 31 (Winter 2001); "The Duty To Supervise, Poser, Broker-Dealer Law and Regulation," 3rd Ed. 2000, Chapter 15; "Derivative Litigation In New York after Marx v. Akers," *New York Business Law Journal*, Vol. 1, No. 1 (Fall 1997).

He has also been a commentator for the business media on television and in print. Among other outlets, he has appeared on NBC's *Today*, and CNBC's *Power Lunch*, *Morning Call*, and *Squawkbox* programs, as well as being featured in *The New York Times*, *Financial Times*, *Bloomberg*, *The National Law Journal*, and the *New York Law Journal*.

EDUCATION:  Wharton School of the University of Pennsylvania, B.S., Economics, 1991. Brooklyn Law School, J.D., *cum laude*, 1995.

BAR ADMISSIONS: New York; U.S. District Courts for the Southern and Eastern Districts of New York.

**JOHN RIZIO-HAMILTON** is involved in a variety of the firm's litigation practice areas, focusing specifically on securities fraud, corporate governance, and shareholder rights. He currently represents the firm's institutional investor clients as counsel in a number of major pending actions.

John was a member of the trial team prosecuting *In re Bank of America Securities Litigation*, which settled for $2.425 billion, the single largest securities class action recovery ever resolving violations of Sections 14(a) and 10(b) of the Securities Exchange Act, and one of the top securities litigation recoveries in history.  He also served as counsel on behalf of the institutional investor plaintiffs in *In re Citigroup, Inc. Bond Action Litigation*, which settled for $730 million, the second largest recovery ever in a securities class action brought on behalf of purchasers of debt securities. In addition, John was a member of the team that prosecuted the *In re Wachovia Corp. Bond/Notes Litigation*, in which the firm recovered a total of $627 million on behalf of investors, one of the 15 largest securities class action recoveries in history.  Most recently, he served as a key member of the team that recovered $150 million for investors in *In re JPMorgan Chase & Co. Securities Litigation*, a securities fraud class action arising out of misrepresentations and omissions concerning JPMorgan's Chief Investment Office, the company's risk management systems, and the trading activities of the so-called "London Whale."

John has also been a member of the trial teams in several additional securities litigations through which the firm has successfully recovered hundreds of millions of dollars on behalf of injured investors. Among other matters, he was part of the trial teams that prosecuted *Eastwood Enterprises LLC v. WellCare*, *In re MBIA, Inc. Securities Litigation*, and *In re RAIT Financial Trust Securities Litigation*.

In addition to his direct litigation responsibilities, John is also responsible for the firm's client outreach in Canada, where he advises institutional investor clients on potential securities fraud and investor claims.  He is one of the partners who oversees the firm's Global Securities and Litigation Monitoring Team, which monitors global equities traded in non-U.S. jurisdictions on prospective and pending international securities matters, and provides critical analysis of options to recover losses incurred on securities purchased in non-U.S. markets.



For his remarkable accomplishments, John was recently named a "Litigation Trailblazer" by *The National Law Journal*.  He has previously been recognized by *Law360* as a "Rising Star" and one of the country's "Top Attorneys Under 40."  John is regularly named to lists of leading practitioners by *Lawdragon* and Thomson Reuters' *Super Lawyers*.

Before joining BLB&G, John clerked for the Honorable Chester J. Straub of the United States Court of Appeals for the Second Circuit, and the Honorable Sidney H. Stein of the United States District Court for the Southern District of New York.

EDUCATION: The Johns Hopkins University, B.A., *with honors*, 1997.  Brooklyn Law School, J.D., *summa cum laude;* Editor-in-Chief of the *Brooklyn Law Review;* first-place winner of the J. Braxton Craven Memorial Constitutional Law Moot Court Competition.

BAR ADMISSIONS: New York; U.S. District for the Southern District of New York.

**REBECCA E. BOON** has been litigating securities fraud and shareholder rights actions for over a decade, recovering more than a billion dollars for the firm's institutional investor clients.

Among numerous other of her notable recoveries, Rebecca was a senior member of the team that obtained $480 million for investors in the securities class action against Wells Fargo & Co. related to its fake accounts scandal, one of the largest settlements in Ninth Circuit history.  Rebecca also represented the New York State Teachers' Retirement System in a securities litigation against the General Motors Company arising from a series of misrepresentations concerning the quality, safety, and reliability of the Company's cars, which resulted in a $300 million settlement – the second largest securities class action recovery in the Sixth Circuit.

Recently, Rebecca was a senior member of the trial team that prosecuted an unprecedented shareholder derivative litigation against Fox News parent 21st Century Fox, Inc. arising from the systemic sexual and workplace harassment at the embattled network. After nearly 18 months of litigation, the team obtained a landmark settlement with two key components: 1) the first ever Board-level watchdog of its kind – the "Fox News Workplace Professionalism and Inclusion Council" of experts – majority independent of the Murdochs, the Company, and Board; and 2) one of the largest financial recoveries – $90 million –  ever obtained in a pure corporate board oversight dispute. Because of her work on the case, Rebecca subsequently narrated a feature documentary by Dow Jones' *MarketWatch* discussing both the *Fox* litigation and the ways that investors can harness their power to create meaningful social change through shareholder litigation.

Rebecca has lectured at Columbia Law School and multiple conferences on the topics of social change, sexual harassment, and shareholder litigation.  She is a founding member of Beyond #MeToo: A Working Group on Corporate Governance, Compliance, and Risk.  Beyond #MeToo seeks to provide a neutral forum for candid discussion, practical discourse, and legal and professional scholarship in developing the next generation of policy prescriptions and best practices related to these complicated issues.

Rebecca is currently prosecuting the securities class action against Qualcomm, Inc.

In recognition of her achievements, she has been named to the *Super Lawyers* list of leading practitioners by Thomson Reuters and to the "500 Leading Plaintiff Financial Lawyer" list by *Lawdragon*.

EDUCATION: Vassar College, B.A., 2004 (History, Correlate in Women's Studies); Social Justice Community Fellow.  Hofstra University School of Law, 2007**,** J.D., *cum laude;* Charles H. Revson Foundation Law Students Public Interest Fellow; *Hofstra Law Review;* Distinguished Contribution to the School and Excellence in International Law Awards; Merit Scholarship.


Bernstein Litowitz
Berger & Grossmann LLP

BAR ADMISSIONS: New York; U.S. District Court for the Southern District of New York, U.S. Courts of Appeals for the Second, Fourth, and Sixth Circuits.

## SENIOR COUNSEL

**JAI K. CHANDRASEKHAR** prosecutes securities-fraud litigation for the firm's institutional-investor clients. He has been a member of the litigation teams on many of the firm's high-profile securities cases, including *In re JPMorgan Chase & Co. Securities Litigation*, in which a settlement of $150 million was achieved for the class; *In re MF Global Holdings Ltd. Securities Litigation*, in which settlements totaling $234.3 million were achieved for the class; *In re Refco, Inc. Securities Litigation*, in which settlements totaling $367.3 million were achieved for the class; *In re Bristol Myers Squibb Co. Securities Litigation*, in which a settlement of $125 million was achieved for the class; *In re Schering-Plough Corp./ENHANCE Securities Litigation*, in which a settlement of $473 million was achieved for the class; *In re comScore, Inc. Securities Litigation*, in which a settlement of $27 million in cash and $83 million in stock was achieved for the class; and *In re Volkswagen AG Securities Litigation*, in which a settlement of $48 million was achieved on behalf of purchasers of Volkswagen AG American Depositary Receipts ("ADRs").

Jai is currently counsel for the plaintiffs in *In re Evoqua Water Technologies Corp. Securities Litigation*, a securities class action arising from misrepresentations in the registration statement for Evoqua's initial public offering of common stock and subsequent statements to investors. Plaintiffs allege that the registration statement and subsequent statements included false and misleading statements about Evoqua's numerous purportedly successful acquisitions and purportedly effective salesforce. He is also counsel for the plaintiffs in *In re Micro Focus International, plc Securities Litigation*, a securities class action arising from misrepresentations in the registration statement for shares issued in Micro Focus's acquisition of the software business of Hewlett Packard Enterprise and in subsequent statements to investors. Plaintiffs allege that the registration statement and subsequent statements included false and misleading statements about the impact of the acquisition, including disruptions in customer accounts, worsening revenue trends, and massive employee attrition.

Jai is also a member of the firm's Global Securities and Litigation Monitoring Team, which monitors global equities traded in non-U.S. jurisdictions for prospective and pending international securities matters, and provides critical analysis of options to recover losses incurred on securities purchased in non-U.S. markets.

Before joining BLB&G, Jai was a Staff Attorney with the Division of Enforcement of the United States Securities and Exchange Commission, where he investigated securities law violations and coordinated investigations involving multiple SEC offices and other government agencies. Before his tenure at the SEC, he was an associate at Sullivan & Cromwell LLP, where he represented corporate issuers and underwriters in public and private offerings of stocks, bonds, and complex securities and advised corporations on periodic reporting under the Securities Exchange Act of 1934, compliance with the Sarbanes-Oxley Act of 2002, and other corporate and securities matters.

Jai is a member of the New York County Lawyers Association, where he serves as Secretary and is a member of the Federal Courts Committee and the Board of Directors of the New York County Lawyers Association Foundation. He is also a member of the New York City Bar Association, where he serves on the Professional Responsibility Committee, and the New York State Bar Association.

EDUCATION: Yale University, B.A., *summa cum laude,* 1987; Phi Beta Kappa. Yale Law School, J.D., 1997; Book Review Editor of the *Yale Law Journal*.



BAR ADMISSIONS: New York; U.S. District Courts for the Eastern and Southern Districts of New York; U.S. Courts of Appeals for Second, Third, Fifth, and Federal Circuits; U.S. District Court for the Western District of Wisconsin.

**JOHN J. MILLS**' practice focuses on negotiating, documenting, and obtaining court approval of the firm's securities, merger, and derivative settlements. Over the past decade, John was actively involved in finalizing the following settlements, among others: *In re Wachovia Preferred Sec. and Bond/Notes Litig.* (S.D.N.Y.) ($627 million settlement); *In re Wilmington Trust Sec. Litig.* (D. Del.) ($210 million settlement); *In re Freeport-McMoRan Copper & Gold Inc. Derivative Litig.* (Del. Ch.) ($153.75 million settlement); *Medina, et al. v. Clovis Oncology, Inc., et al.* (D. Colo.) ($142 million settlement); *In re News Corp. S'holder Litig.* (Del. Ch.) ($139 million recovery and corporate governance enhancements); *In re Mut. Funds Invest. Litig.* (MFS, Invesco, and Pilgrim Baxter Sub-Tracks) (D. Md.) ($127.036 million total recovery); *Fresno County Employees' Ret. Ass'n, et al. v. comScore, Inc., et al.* (S.D.N.Y.) ($110 million settlement); *In re El Paso Corp. S'holder Litig.* (Del. Ch.) ($110 million settlement); *In re Starz Stockholder Litig.* (Del. Ch.) ($92.5 million settlement); and *The Dep't of the Treasury of the State of New Jersey and its Div. of Invest. v. Cliffs Natural Res. Inc., et al.* (N.D. Ohio) ($85 million settlement).

John received his J.D. from Brooklyn Law School, *cum laude*, where he was a Carswell Merit Scholar recipient and a member of *The Brooklyn Journal of International Law*. He received his B.A. from Duke University.

EDUCATION:  Duke University, B.A., 1997.  Brooklyn Law School, J.D., *cum laude,* 2000; Member of *The Brooklyn Journal of International Law;* Carswell Merit Scholar recipient.

BAR ADMISSIONS:  New York; U.S. District Courts for the Eastern and Southern Districts of New York.

# ASSOCIATES

**MICHAEL MATHAI**'s practice focuses on securities fraud, corporate governance and shareholder rights litigation.

Prior to joining the firm, Michael was a litigation associate at O'Melveny & Myers LLP, where he represented financial services and other companies in securities class action, shareholder rights, antitrust, and commercial litigation matters in state and federal court.  He also gained considerable experience representing companies and individuals in investigations and inquiries by regulatory bodies including the SEC, DOJ, FTC, and FINRA.

He is currently a member of the teams prosecuting securities class actions against Allergan, CenturyLink, Henry Schein, and NVIDIA, among others.

EDUCATION: Harvard University, A.B., *cum laude*, 2006, Economics.  London School of Economics and Political Science, 2008, M.Sc., Economics.  Columbia Law School, J.D., 2012; Harlan Fiske Stone Scholar.

BAR ADMISSION: New York.



**BRENNA NELINSON**'s practice focuses on securities fraud, corporate governance and shareholder rights litigation. She practices out of the firm's New York office. Brenna was a member of the trial team that recovered $22 million in *In re Virtus Inc. Securities Litigation* on behalf of defrauded investors.

Brenna is a member of the teams prosecuting *In re EQT Corporation Securities Litigation*, *In re Celgene Corporation Securities Litigation*, *Logan v. ProPetro Holding Corp., et al.*, *Steinberg v. OPKO Inc., et al.*, *In re Merit Medical Systems, Inc. Securities Litigation*, and *In re Mattel, Inc Securities Litigation*.

Prior to joining the firm, Brenna was a Litigation Associate at Hogan Lovells US LLP. She represented a variety of defendants in all aspects of corporate litigation.

EDUCATION: New York University, B.A., 2011, Individualized Study – Psychology and Philosophy.  American University Washington College of Law, J.D., *cum laude,* 2014; Note & Comment Editor, *American University International Law Review;* Moot Court Honor Society.

BAR ADMISSION:  Maryland.


**BENJAMIN RIESENBERG** (former associate) focused his practice on securities fraud, corporate governance and shareholder rights litigation. He was a member of the teams prosecuting securities fraud class actions against Cognizant Technology Solutions Corporation, Restoration Hardware and Adeptus Health Inc.

Benjamin joined the firm in 2016 and interned at several prestigious organizations while in law school, including the Financial Industry Regulator Authority (FINRA), Thomson Reuters, and the Bronx District Attorney's Office.

EDUCATION:  Brooklyn Law School , J.D.; Articles Editor, 2016, *Brooklyn Law Review*, Moot Court Honor Society. University of Pittsburgh, B.A., English Writing, 2012, *Dean's List.*

BAR ADMISSION**:  N**ew York.


**ROSS SHIKOWITZ** (former associate) focused his practice on securities litigation.  He was a member of the firm's new matter department, in which he, as part of a team of attorneys, financial analysts, and investigators, counsels institutional clients on potential legal claims.

Ross had also served as a member of the litigation teams responsible for successfully prosecuting a number of the firm's significant cases involving wrongdoing related to the securitization and sale of residential mortgage-backed securities ("RMBS") and had recovered hundreds of millions of dollars on behalf of injured investors.  He successfully represented Allstate Insurance Co., Metropolitan Life Insurance Company, Teachers Insurance and Annuity Association of America, Bayerische Landesbank, Dexia SA/NV, Sealink Funding Limited, and Landesbank Baden-Württemberg against various issuers of RMBS in both state and federal courts.

Ross served as a member of the litigation team prosecuting the securities fraud class action against Volkswagen AG, which recently resulted in a recovery of $48 million for Volkswagen investors and arose out of Volkswagen's illegal use of defeat devices in millions of purportedly clean diesel cars to cheat emissions standards worldwide.  He also served as a member of the team litigating the securities class action concerning GT Advanced Technologies Inc., which alleges that defendants knew that the company's $578 million deal to supply Apple, Inc. with product was an onerous and massively one-sided agreement that allowed GT executives to sell millions worth of stock.  The case concerning GT has resulted in $36.7 million in recoveries to date.



For his accomplishments, Ross was consistently named by *Super Lawyers* as a New York "Rising Star" in the area of securities litigation.

While in law school, Ross was a research assistant to Brooklyn Law School Professor of Law Emeritus Norman Poser, a widely respected expert in international and domestic securities regulation. He also served as a judicial intern to the Honorable Brian M. Cogan of the Eastern District of New York, and as a legal intern for the Major Narcotics Investigations Bureau of the Kinds Country District Attorney's Office.

EDUCATION: Brooklyn Law School, J.D., 2010, *magna cum laude*, Notes/Comments Editor, *Brooklyn Law Review*; Moot Court Honor Society; Order of Barristers Certificate; CALI Excellence for the Future Award in Products Liability, Professional Responsibility.  Indiana University-Bloomington, M.M, Music, 2005.  Skidmore College, B.A., Music, 2003, *cum laude*.

BAR ADMISSIONS:  New York; U.S. District Court, Southern District of New York; U.S. District Court, Eastern District of New York.

**MATTHEW TRAYLOR** practices out of the firm's New York office, prosecuting securities fraud litigation on behalf of the firm's institutional investor clients.

Prior to joining the firm, Matthew was an associate at Cahill Gordon & Reindel where he specialized in complex litigation and investigations, including: securities, antitrust and complex commercial litigation, as well as FCPA compliance and internal investigations.

While attending law school, Matthew served as Vice President of the Black Law Student Association. In addition, he was also a member of the Public Interest Law Union, and a 2L Representative for the American Constitutional Society.

EDUCATION:  Binghamton University, B.A., *magna cum laude,* 2014.  Cornell Law School, J.D., 2017; General Editor, *Cornell Journal of Law and Public Policy.*

BAR ADMISSION:  New York.

## STAFF ATTORNEYS

**BEN BAKKE** has worked on numerous matters at BLB&G, including *In re Signet Jewelers Limited Securities Litigation, Mudrick Capital Management, L.P. v. Globalstar, Inc., St. Paul Teachers' Retirement Fund Association v. HeartWare International, Inc., Hefler et al. v. Wells Fargo & Company et al.* and *Bear Stearns Mortgage Pass-Through Litigation.*

Prior to returning to the firm in 2018, Ben was an Investigative Attorney, Civil Division, United States Attorney' s Office for the Eastern District of New York, where he worked on a complex financial investigation of a major bank involving mortgage-backed securities.

EDUCATION:  University of Wisconsin, B.A., 2002. Emory University School of Law, J.D., 2005.  Baruch College – Zicklin School of Business, M.B.A., 2014.

BAR ADMISSIONS:  New York.



**ALEXA BUTLER** has worked on numerous matters at BLB&G, including *In re Signet Jewelers Limited Securities Litigation, St. Paul Teachers' Retirement Fund Association v. HeartWare International, Inc., Hefler et al. v. Wells Fargo & Company et al., Medina, et al v. Clovis Oncology, Inc., et al, In re Virtus Investment Partners, Inc. Securities Litigation, In re Bank of New York Mellon Corp. Forex Transactions Litigation, In re JPMorgan Chase & Co. Securities Litigation, In re Merck & Co., Inc. Securities Litigation (VIOXX-related), In re MBIA Inc. Securities Litigation, In re Washington Mutual, Inc. Securities Litigation, In re Merrill Lynch & Co., Inc. Securities, Derivative and ERISA Litigation (Bond Action), In re Refco , Inc. Securities Litigation* and *Affiliated Computer Services, Inc. Shareholder Derivative Litigation*.

Prior to joining the firm in 2007, Alexa was a contract attorney at Whatley Drake & Kallas, LLC, where she worked on complex class action litigation.

EDUCATION:  Georgia Institute of Technology, B.S., 1993.  St. John' s University School of Law, J.D., 1997.

BAR ADMISSIONS:  New York.

**STEPHANIE BUTLER** has worked on several matters at BLB&G, including *In re Signet Jewelers Limited Securities Litigation* and *Hefler et al. v. Wells Fargo & Company et al.*

Prior to joining the firm, Stephanie worked as a contract attorney on a complex litigation. Previously, Stephanie was a Boston University Fellow at the New Jersey Institute for Social Justice.

EDUCATION:  Bryn Mawr College, A.B., 2011.  Boston University School of Law, J.D., 2017.

BAR ADMISSIONS:  New Jersey.

**JEFFREY CASTRO** has worked on numerous matters at BLB&G, including *In re Signet Jewelers Limited Securities Litigation, Hefler et al. v. Wells Fargo & Company et al., Medina et al v. Clovis Oncology, Inc., et al, and Fresno County Employees' Retirement Association v. comScore, Inc.*  Mr. Castro also worked with BLB&G on behalf of co-counsel on *In re Salix Pharmaceuticals, Ltd., Securities Litigation.*

Prior to joining the firm, Jeff worked as a contract attorney on securities litigation and other matters.  Previously, Jeff was an associate at Jones Hirsch Connors & Bull P.C., where he worked on World Trade Center litigation.

EDUCATION:  Binghamton University, B.A., 1996.  New York Law School, J.D., 2004.

BAR ADMISSIONS:  New York, New Jersey.

**CHRISTOPHER CLARKIN** has worked on numerous matters at BLB&G, including *In re Signet Jewelers Limited Securities Litigation, In re SunEdison, Inc., Securities Litigation, Hefler et al. v. Wells Fargo & Company et al., Fresno County Employees' Retirement Association v. comScore, Inc., In re Wilmington Trust Securities Litigation, In re Salix Pharmaceuticals, Ltd. Securities Litigation, West Palm Beach Police Pension Fund v. DFC Global Corp., In re NII Holdings, Inc. Securities Litigation, In re Facebook, Inc., IPO Securities and Derivative Litigation, In re Bank of New York Mellon Corp. Forex Transactions Litigation, SMART Technologies, Inc. Shareholder Litigation, In re Citigroup Inc. Bond Litigation* and *In re Pfizer Inc. Shareholder Derivative Litigation.*



Prior to joining the firm in 2010, Chris worked as a contract attorney on several large-scale litigations.

EDUCATION:  Trinity College, B.A., 2000.  New York Law School, J.D., 2006.

BAR ADMISSIONS:  New York, Connecticut.


**ERIKA CONNOLLY** has worked on numerous matters at BLB&G, including *In re Signet Jewelers Limited Securities Litigation, In re Stericycle, Inc., Securities Litigation, St. Paul Teachers' Retirement Fund Association v. HeartWare International, Inc., Hefler et al. v. Wells Fargo & Company et al., In re Green Mountain Coffee Roasters, Inc. Securities Litigation, In re MF Global Holdings Limited Securities Litigation* and *In re Merck & Co., Inc. Securities Litigation (VIOXX-related).*

Prior to joining the firm in 2014, Erika was an attorney at Stull, Stull & Brody, where she worked on complex securities class action litigation.

EDUCATION:  Boston University, B.A., *magna cum laude*, 2007.  Fordham University School of Law, J.D., 2011.

BAR ADMISSIONS:  New York.


**MASHARIKI DANIELS** has worked on numerous matters at BLB&G, including *In re Signet Jewelers Limited Securities Litigation, Mudrick Capital Management, L.P. v. Globalstar, Inc., St. Paul Teachers' Retirement Fund Association v. HeartWare International, Inc., Hefler et al. v. Wells Fargo & Company et al.* and *Fresno County Employees' Retirement Association v. comScore, Inc.*

Prior to joining the firm in 2017, Mashariki was a staff attorney at Bleichmar, Fonti & Auld LLP and Labaton Sucharow LLP, where she worked on complex securities litigations.  Previously, Mashariki was an associate at Gersten Savage, LLP, where she worked on corporate securities transactions.

EDUCATION:  Norfolk State University, B.A., 1999.  Thomas M. Cooley Law School, J.D., 2007.

BAR ADMISSIONS:  New York.


**ALEX DICKIN** has worked on numerous matters at BLB&G, including *In re Signet Jewelers Limited Securities Litigation, City of Sunrise General Employees' Retirement Plan v. FleetCor Technologies, Inc., et al, St. Paul Teachers'  Retirement Fund Association v. HeartWare International, Inc., Hefler et al. v. Wells Fargo & Company et al., Fresno County Employees' Retirement Association v. comScore, Inc., In re Salix Pharmaceuticals, Ltd. Securities Litigation* and *In re Wilmington Trust Securities Litigation.*

Prior to joining the firm in 2014, Alex was an attorney at Labaton Sucharow, where he focused on residential mortgage-backed securities litigation.  Previously, Alex was an associate at Herbert Smith Freehills, where he worked on M&A, private equity and corporate restructuring agreements, among other responsibilities.



BLB&G
Bernstein Litowitz
Berger & Grossmann LLP

EDUCATION:  Macquarie University, B.B.A. 2005; L.L.B. 2008, with *Honors*.

BAR ADMISSIONS:  New York.

**IGOR FAYNSHTEYN** has worked on numerous matters at BLB&G, including *In re Signet Jewelers Limited Securities Litigation, Hefler et al. v. Wells Fargo & Company et al., Medina et al v. Clovis Oncology, Inc., et al, and Fresno County Employees' Retirement Association v. comScore, Inc.*  Igor also worked with BLB&G on behalf of co-counsel on *In re Merck & Co., Inc., Securities Litigation (VIOXX-related).*

Prior to joining the firm, Igor worked as a contract attorney on several complex securities and patent litigations.

EDUCATION:  City University of New York, Hunter College, B.A., 2005; M.A., 2006.  Brooklyn Law School, J.D., 2011.

BAR ADMISSIONS:  New York.

**JOSEPH FERRONE** has worked on several matters at BLB&G, including *In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litigations, In re Signet Jewelers Limited Securities Litigation* and *In re Equifax Inc., Securities Litigation.*

Prior to joining the firm, Joseph was a contract attorney at Selendy & Gay PLLC.  Previously, Joseph was a project manager and team leader on several complex litigations.

EDUCATION:  Binghamton University, B.S., 1995.  Benjamin N. Cardozo School of Law, J.D., 2000.

BAR ADMISSIONS:  New York.

**CHERYL GANDY** (former staff attorney) has worked on several matters at BLB&G, including *In re Signet Jewelers Limited Securities Litigation, In re Bank of New York Mellon Corp. Forex Transactions Litigation Communications, Inc.* and *In re WorldCom, Inc., Securities Litigation.*

Prior to returning to the firm in 2019, Cheryl was a staff attorney at Labaton Sucharow LLP.  Cheryl was previously a corporate associate at Paul Hastings LLP, McCarter & English, LLP and Gersten & Savage LLP.

EDUCATION:  State University of New York at Buffalo, A.B.  University at Buffalo, School of Law, J.D.  Harvard Law School, LL.M.  John F. Kennedy School of Government, Harvard University, M.P.A.

BAR ADMISSIONS:  New York.

**REENA GARG** has worked on several matters at BLB&G, including *In re Charter Communications, Inc., Derivative Litigation, In re Signet Jewelers Limited Securities Litigation* and *In re Equifax Inc., Securities Litigation.*

Prior to joining the firm, Reena was a contract attorney on several complex litigations.

EDUCATION:  Boston University School of Management, B.S., Business Administration, Dual Concentration in Law and Finance, 2007.  State University of New York at Buffalo, J.D., 2011.



BAR ADMISSIONS:  New York.

**DARIENNE GREY** has worked on several matters at BLB&G, including *In re The Boeing Company Aircraft Securities Litigation* and *In re Signet Jewelers Limited Securities Litigation*.

Prior to joining the firm, Darienne was a contract attorney at Cravath Swain & Moore LLP, and at Collen Intellectual Property Law, P.C.

EDUCATION:  Barnard College/Columbia University, A.B., 2002; National Dean's List, Honors Award for Academic Achievement, Marian Zandek Memorial Award.  Brooklyn Law School, J.D., 2009.

BAR ADMISSIONS:  New York.

**DANIEL GRUTTADARO** has worked on numerous matters at BLB&G, including *In re Signet Jewelers Limited Securities Litigation, In re Stericycle, Inc., Securities Litigation, St. Paul Teachers' Retirement Fund Association v. HeartWare International, Inc., Hefler et al. v. Wells Fargo & Company et al., Medina, et al v. Clovis Oncology, Inc., et al, Bach v. Amedisys, Inc., In re Salix Pharmaceuticals, Ltd. Securities Litigation, General Motors Securities Litigation, In re Bank of New York Mellon Corp. Forex Transactions Litigation* and *In re Merck & Co., Inc. Securities Litigation (VIOXX-related)*.

Prior to joining the firm in 2014, Daniel was a staff attorney at Stull, Stull & Brody.

EDUCATION:  State University of New York at Geneseo, B.S., 2005.  State University of New York at Buffalo Law School, J.D., *cum laude*, 2009.

BAR ADMISSIONS:  New York.

**JARED HOFFMAN** has worked on numerous matters at BLB&G, including *In re Signet Jewelers Limited Securities Litigation, In re Allergan, Inc. Proxy Violation Securities Litigation, In re NII Holdings, Inc. Securities Litigation, In re Facebook, Inc., IPO Securities and Derivative Litigation, In re Bank of New York Mellon Corp. Forex Transactions Litigation, SMART Technologies, Inc. Shareholder Litigation* and *In re Citigroup Inc. Bond Litigation*.

Prior to joining the firm in 2011, Jared was an associate at Blank Rome LLP.

EDUCATION:  Emory University, Goizueta Business School, B.B.A., 2002.  New York University, School of Law, J.D., 2005.

BAR ADMISSIONS:  New York.

**IRINA KNOPP** (former staff attorney) has worked on *In re Signet Jewelers Limited Securities Litigation* and *Hefler et al. v. Wells Fargo & Company et al.*

Prior to joining the firm, Irina worked as a contract attorney on several complex litigations at various firms, including at Cleary, Gottlieb, Steen & Hamilton LLP, where she worked on SEC inquiries, financial institution investigations and bankruptcy actions.

EDUCATION:  Brooklyn College, B.A., *summa cum laude*, 2006.  Fordham University School of Law, J.D., *magna cum laude*, 2010.



BAR ADMISSIONS:  New York.


**PAUL LIM** (former staff attorney) has worked on *In re Signet Jewelers Limited Securities Litigation* and *Hefler et al. v. Wells Fargo & Company et al.*

Prior to joining the firm, Paul worked as a contract attorney on several complex securities and patent litigations.  Previously, Paul was an associate at Norris McLaughlin & Marcus and at Cooper Dunham LLC.

EDUCATION:  Boston University, B.A., 1995.  Boston University School of Law, J.D., 2001.

BAR ADMISSIONS:  New York.


**JEFFREY MESSINGER** has worked on several matters at BLB&G, including *In re Celgene Corporation Securities Litigation, In re Henry Schein, Inc. Securities Litigation* and *In re Signet Jewelers Limited Securities Litigation.*

Prior to joining the firm, Jefferey was a partner at Milberg LLP, where he prosecuted mass tort and class action litigation.

EDUCATION:  State University of New York at Stony Brook, B.A., 1980.  Boston University School of Law, J.D., 1984.

BAR ADMISSIONS:  New York.


**VANESSA OLIVIER** (former staff attorney) has worked on several matters at BLB&G, including *In re Signet Jewelers Limited Securities Litigation, Hefler et al. v. Wells Fargo & Company et al.* and *Fresno County Employees' Retirement Association v. comScore, Inc.*

Prior to joining the firm, Vanessa worked as a contract attorney on complex matters including financial compliance and anti-trust issues.  Previously, Vanessa was as an Assistant District Attorney at the Queens District Attorney's Office, conducting bench and jury trials.

EDUCATION:  Amherst College, B.A., 2001.  Boston College Lynch School of Education, Master of Education, 2006.  Boston College Law School, J.D., 2006.

BAR ADMISSIONS:  New York.


**COMFORT ORJI** has worked on several matters at BLB&G, including *In re The Boeing Company Aircraft Securities Litigation, In re Signet Jewelers Limited Securities Litigation* and *In re SunEdison, Inc., Securities Litigation.*

Prior to joining the firm in 2018, Comfort worked as a staff attorney at Labaton Sucharow LLP.  Comfort previously worked as an associate at Stavis & Kornfeld, LLP, where she represented clients in civil and criminal actions, including criminal trials and appeals.

EDUCATION:  University of Benin, Bachelor of Laws (LL.B.), 1998.  Nigerian Law School, B.L., 1999.

BAR ADMISSIONS:  New York.


Bernstein Litowitz
Berger & Grossmann LLP

**JULIUS PANELL** has worked on several matters at BLB&G, including *In re Signet Jewelers Limited Securities Litigation, Hefler et al. v. Wells Fargo & Company et al.* and *Fresno County Employees' Retirement Association v. comScore, Inc.*

Prior to joining the firm, Julius worked as a contract attorney on numerous complex litigations, including shareholder derivative and class action lawsuits. Julius began his legal career at a solo practice, working on all facets of civil and criminal matters.

EDUCATION: Queens College, B.A., 1992. John Jay College of Criminal Justice, M.A., 1996. New York Law School, J.D., 2000.

BAR ADMISSIONS: New York.

**CHRISTINA PAPP (SUAREZ)** has worked on numerous matters at BLB&G, including *In re Signet Jewelers Limited Securities Litigation, In re Akorn, Inc., Securities Litigation, St. Paul Teachers' Retirement Fund Association v. HeartWare International, Inc., In re Volkswagen AG Securities Litigation, Arkansas Teacher Retirement System, et al. v. Insulet Corp., et al., Town of Davie Police Pension Plan v. CommVault Systems, Inc., et al, Kohut v. KBR, Inc. et al., In re NII Holdings, Inc. Securities Litigation* and *In re JPMorgan Chase & Co. Securities Litigation.*

Prior to joining the firm in 2014, Christina was a litigation associate at Schulte Roth & Zabel LLP.

EDUCATION: Barnard College, Columbia University, B.A., *magna cum laude*, 2002. George Washington University Law School, J.D., 2006.

BAR ADMISSIONS: New York.

**CHESLEY PARKER** has worked on numerous matters at BLB&G, including *In re The Boeing Company Aircraft Securities Litigation, In re Signet Jewelers Limited Securities Litigation, San Antonio Fire and Police Pension Fund et al v. Dole Food Company, Inc. et al,* and *In re Altisource Portfolio Solutions, S.A., Securities Litigation.*

Prior to joining the firm in 2016, Chesley was a contract attorney at several New York firms.

EDUCATION: The College of the Holy Cross, B.A., 2002. St. John's University School of Law, J.D., 2003.

BAR ADMISSIONS: New York.

**PRISCILLA PELLECCHIA** has worked on several matters at BLB&G, including *In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litigations, In re Signet Jewelers Limited Securities Litigation* and *In re Equifax Inc., Securities Litigation.*

Prior to joining the firm, Priscilla was a contract attorney at Selendy & Gay PLLC. Previously, Priscilla was an associate at Caruso Smith Edell Picini, PC.

EDUCATION: Georgetown University, B.A., 2002. Brooklyn Law School, J.D., 2008.

BAR ADMISSIONS: New York.


Bernstein Litowitz
Berger & Grossmann LLP

**JESSICA PURCELL** has worked on numerous matters at BLB&G, including *In re Wilmington Trust Securities Litigation, In re Allergan, Inc. Proxy Violation Securities Litigation, In re Bank of New York Mellon Corp. Forex Transactions Litigation* and *In re Citigroup Inc. Bond Litigation.*

Prior to joining the Firm in 2011, Jessica was a contract attorney at Constantine & Cannon, LLP.

EDUCATION:  Georgetown University, B.S., Business Administration (Accounting) 2002. Catholic University of America, Columbus School of Law, J.D., *cum laude*, 2006.

BAR ADMISSIONS:  Connecticut, New York.


**RICHARD RAGANELLA** (former staff attorney) has worked on *In re Signet Jewelers Limited Securities Litigation.*

Prior to joining the firm, Ricky was a contract attorney at Mckool Smith, where he focused on residential mortgage-backed securities litigation.

EDUCATION:  Hofstra University, B.B.A., Banking & Finance, 2000.  New York Law School, J.D., 2007.

BAR ADMISSIONS:  New York.


**DOUGLAS SECULAR** (former staff attorney) has worked on *In re Signet Jewelers Limited Securities Litigation.*

Prior to joining the firm, Doug was a contract attorney on several complex litigations.  Previously, Doug was General Counsel at Meridian Worldwide, Inc.

EDUCATION:  George Washington University, B.A., 1984.  State University of New York at Buffalo, J.D., *cum laude*, 1992.  New York University School of Law, LL.M., Taxation, 2000.

BAR ADMISSIONS:  New York.


**MEGAN TAGGART** has worked on numerous matters at BLB&G, including *In re Signet Jewelers Limited Securities Litigation, Hefler et al. v. Wells Fargo & Company et al.* and *Fresno County Employees' Retirement Association v. comScore, Inc.*  Megan has also assisted on the administration of class action settlements.

Prior to joining the firm in 2017, Megan was a litigation associate at Kelley Drye & Warren, LLP.

EDUCATION:  Northwestern University, B.A., 1998.  Fordham University School of Law, J.D., 2009.

BAR ADMISSIONS:  New York.


**CATHERINE TRUESAW** (former staff attorney) has worked *In re Signet Jewelers Limited Securities Litigation* and *In re Equifax Inc., Securities Litigation.*

Prior to joining the firm, Catherine was a contract attorney at Mayer Brown LLP and Gibson, Dunn & Crutcher LLP.  Previously, Catherine was an associate at Melli & Wright and Hook, Torack & Smith, where she litigated personal injury claims and other matters.



EDUCATION:  Saint Peter's College, B.A., 1987, *summa cum laude*.  New York Law School, J.D., 1990.

BAR ADMISSIONS:  New Jersey.

**VINCENT LE VOCI** (former staff attorney) has worked on *In re Signet Jewelers Limited Securities Litigation* and *In re Equifax Inc., Securities Litigation*.

Prior to joining the firm, Vincent was an e-discovery attorney on complex litigations.  Previously, Vincent provided legal services to start-up and emerging businesses in manufacturing, consulting, real estate, and not-for-profit enterprises.

EDUCATION:  Fordham University, B.A., 1974; M.A., 1979.  St. John's University School of Law, J.D., 1992.

BAR ADMISSIONS:  New York, New Jersey.

**CECILE WORTMAN** has worked on several matters at BLB&G, including *In re Signet Jewelers Limited Securities Litigation, Hefler et al. v. Wells Fargo & Company et al.*

Prior to joining the firm, Cecile worked as a contract attorney on a complex litigation.  Previously, Cecile was a law clerk at the Law Office of Herbert T. Patty.

EDUCATION:  CUNY Queens College, B.A., *summa cum laude,* 2014; Phi Beta Kappa. Benjamin N. Cardozo School of Law, J.D., 2017.

BAR ADMISSIONS:  New York.

**KENDALL WOSTL** (former staff attorney) has worked on several matters at BLB&G, including *In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litigations, In re Signet Jewelers Limited Securities Litigation* and *In re Equifax Inc., Securities Litigation*.

Prior to joining the firm, Kendall was a contract attorney at Mayer Brown LLP and Gibson, Dunn & Crutcher LLP.  Previously, Kendall was an associate at Sofer & Haroun, LLP and Sonnenschein Nath & Rosenthal LLP, where she worked on trademark and copyright matters.

EDUCATION:  Boston University, B.S., 1994.  New York Law School, J.D., 2000.

BAR ADMISSIONS:  New York.